UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COMPLETE LOGISTICAL SERVICES, LLC, | ) ) ) | Civil Action No.: |
| | ) | Judge: |
| Plaintiff, | ) ) | Magistrate Judge: |
| versus | ) ) | |
| DONALD RULH, JR., ARNOLD BAKER, MORRIS KAHN, MICHELLE ELWELL, AND SHAWANA HARRIS | ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Complete Logistical Services, LLC ("CLS") brings its verified complaint for injunctive relief and damages (the "Complaint") against Donald Rulh, Jr., Arnold Baker, Morris Kahn, Michelle Elwell, and Shawana Harris.

### INTRODUCTION

1.     CLS is a Louisiana LLC with its principal place of business in New Orleans, Louisiana.

2.     CLS is in the business of providing contract labor to various marine industries.

3.     Prior to the events giving rise to this lawsuit, CLS had four members, one of whom was Mr. Donald Rulh, Jr.

4.     Mr. Rulh, while a member of CLS, breached his fiduciary duties to CLS. By way of illustration, on or about December 6, 2017, Mr. Rulh withdrew $222,000.00 from CLS' bank account, essentially depleting the account completely. In addition to lacking any authority to take these funds, the timing of Mr. Rulh's withdrawal caused CLS to be without money

necessary to fund payroll.  CLS had to factor invoices at a premium rate to cover the shortfall.  Mr. Rulh's conversion of CLS' money also required CLS to substantially delay plans to pay or accrue holiday bonuses to employees, resulting in key employee resigning and negatively affected employee morale.  Subsequently, Mr. Rulh agreed to place $111,000.00 of the funds in his attorneys' trust account, but shortly thereafter, without notice to CLS, Mr. Rulh demanded and received a return of the funds from his lawyer.  Further, Mr. Rulh has misappropriated CLS' Company assets for his personal benefit, including making personal charges on a credit card that CLS issued to him and directing CLS' funds to pay personal expenses he and his wife incurred.

5.     In October of 2016, Mr. Rulh requested CLS to loan him $25,000.00 to refinance the debt encumbering his personal residence.  CLS agreed, provided the refinancing closed.  Rather than refinance the debt encumbering his personal residence, in 2017 Mr. Rulh sold the property and did not repay the loan to CLS made to him.

6.     Mr. Rulh has damaged CLS' image with customers and/or employees through his states of intoxication and other erratic behavior.  On December 13, 2014, Mr. Rulh arrived at CLS' Holiday Party so inebriated he was unable to speak.

7.     Without any authority, Mr. Rulh in 2017 changed the locks at CLS' office at Harvey, Louisiana and did not provide keys to the other members of CLS, or to employees of CLS not based in Harvey, Louisiana.  In essence, Mr. Rulh treated CLS' office at Harvey, Louisiana as his personal domain.

8.     Kelly Brouilette reported to Spencer Sens, President and CEO of CLS, that, in December of 2016, while making sales calls for Trash Doctors, she observed Mr. Rulh giving at

least $2,000 in cash and a "CLS" mug to a man in a Lincoln Navigator.  Mr. Rulh commented at the time that he "had deals like this going on everywhere."

9.      Mr. Rulh recommended that CLS enter into a contractual arrangement with Kenny Berger and Andries & Associates related to a "can't lose - deal of a lifetime" to install electrical connections for the FEMA trailers being installed in Baton Rouge and surrounding parishes after the flood in 2016.  All work was completed and Andries & Associates was invoiced for the work.  Andries & Associates did not pay CLS the $50,390.00 due and owing.  Mr. Rulh agreed to pursue collection, but he did not do so.

10.      Mr. Rulh has taken confidential and proprietary information of CLS, including, without limitation, lists of customers and other contacts, financial information, and billing information and intends to use the misappropriated information to compete against CLS.

11.      Mr. Rulh's efforts to steal this information from CLS were aided and abetted by Michelle Elwell and Shawanna Harris, former employees of CLS.

12.      Mr. Rulh, Ms. Elwell, Ms. Harris, acting in concert with Mr. Baker and Mr. Kahn, upon information and belief, intend to use the information that Mr. Rulh has stolen from CLS to open a competing business using CLS's confidential information and trade secrets.

13.      Based on Mr. Rulh's unlawful conduct, CLS asserts the following claims: Violation of the Defend Trade Secrets Act; Violation of the Louisiana Uniform Trade Secrets Act; Violation of the Computer Fraud and Abuse Act; Violation of the Louisiana Unfair Trade Practices Act; Unjust Enrichment; Breach of Fiduciary Duty/Duties of Loyalty and Due Care; Conversion; Conspiracy; and Fraud.

14.     In addition, to prevent further irreparable harm, CLS seeks a temporary restraining order and preliminary and permanent injunctive relief requiring each Defendant individually, all Defendants collectively, and all those in active concert with them to: (1) return all confidential information and trade secrets stolen from CLS, (2) honor their contractual, statutory, and civil law obligations concerning CLS' confidential information, (3) cease any attempts to use CLS's information, or any information gleaned therefrom, and to cease actions to open a business to compete with CLS using CLS' information.

## PARTIES

15.     CLS is a Louisiana limited liability company, with a principal place of business at 4400 Poche Court West, New Orleans, Louisiana 70129.

16.     Mr. Donald Rulh, Jr. is a citizen of Louisiana who, upon information and belief, resides at 860 Marlene Drive, Gretna, Louisiana 70056.

17.     Mr. Arnold Baker is a citizen of Louisiana who, upon information and belief, resides at 3910 Jena St, New Orleans, LA 70125.

18.     Mr. Morris Kahn is a citizen of Louisiana who, upon information and belief, resides at 1000 N. Rampart Street, New Orleans, LA 70116.

19.     Ms. Michelle Elwell is a citizen of Louisiana who, upon information and belief, resides at 104 Robin Dale Dr., Youngsville, LA 70592.

20.     Ms. Shawana Harris is a citizen of Louisiana who, upon information and belief, resides at 127 Benton Dr., Lafayette, LA 70507.

## JURISDICTION AND VENUE

21.     The Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331.  CLS' action arises under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 as well

as the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  The Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

22.     Venue in this district is proper pursuant to 28 U.S.C. §1391.  Mr. Rulh, Mr. Baker, and Mr. Kahn reside in this district and a substantial part of the events or omissions giving rise to CLS' claims occurred in this district.  Specifically, all of the Defendants conspired jointly to misappropriate the trade secrets of CLS and the physical misappropriation of those trade secrets occurred in the Greater New Orleans Area.

23.     This Court has jurisdiction over the person of Mr. Rulh because he is a citizen of Louisiana and resides at 860 Marlene Drive, Gretna, Louisiana 70056.

24.     This Court has jurisdiction over the person of Mr. Baker because he is a citizen of Louisiana and resides at 3910 Jena St, New Orleans, LA 70125.

25.     This Court has jurisdiction over the person of Mr. Kahn because he is a citizen of Louisiana and resides at 1000 N. Rampart Street, New Orleans, LA 70116.

26.     This Court has jurisdiction over the person of Ms. Elwell because she is a citizen of Louisiana and resides at 104 Robin Dale Dr., Youngsville, LA 70592.

27.     This Court has jurisdiction over the person of Ms. Harris because she is a citizen of Louisiana and resides at 127 Benton Dr., Lafayette, LA 70507.

## BACKGROUND

28.     As a result of Mr. Rulh's pattern of improper conduct causing direct harm to CLS, and in particular his misappropriation of over $200,000 in CLS' corporate funds in December of 2017, the members of CLS began taking actions to protect CLS from Mr. Rulh's conduct.

29.     On January 3, 2018, a majority of the members of CLS, wrote Mr. Rulh to inform him, among other things, that he "is not authorized to act unilaterally for or on behalf of the

Company with respect to the management of the Company, including but not limited to incurring any obligation on behalf of the Company or taking any action relative to the Company's assets." The majority of the Members of CLS enclosed to this letter a Consent of the Majority of the Members of CLS, dated January 3, 2018. CLS' counsel, on January 5, 2018, emailed to Mr. Rulh and his attorney, Michael Carbo, the aforementioned letter of January 3, 2018, and the Consent of the Majority of the Members of CLS, dated January 3, 2018. CLS attaches *in globo* as Exhibit "A" to its complaint a copy of CLS' counsel's email, dated January 5, 2018, with attachments.

30.     On January 23, 2018, CLS' counsel sent a letter to Mr. Rulh, enclosing a copy of a Consent of the Majority of the Members of CLS, dated January 19, 2018, adopting resolutions determining that Mr. Rulh caused direct harm to CLS and that CLS, effective January 22, 2018, would treat Mr. Rulh "as an assignee of the Company." CLS' counsel, on January 23, 2018, emailed to Mr. Rulh and his attorney, Mr. Carbo, the aforementioned letter of January 23, 2018, and the Consent of the Majority of the Members of CLS, dated January 19, 2018. CLS attaches *in globo* as Exhibit "B" a copy of CLS' counsel's email, dated January 23, 2018, with its attachments.

31.     In his letter dated January 23, 2018, CLS' counsel informed Mr. Rulh that a majority of the members of CLS unanimously adopted resolutions determining that Mr. Rulh caused direct harm to CLS and that CLS, effective January 22, 2018, would treat Mr. Rulh "as an assignee of the Company." CLS' counsel reminded Mr. Rulh that Section 11.1 of CLS' Operating Agreement "provides that an assignee shall have no management rights with respect to the Company. Additionally, while you are on administrative leave, you are not to conduct any

6

business in the name of or on behalf of the Company without prior written consent of a majority of the Members of the Company."

32.   A majority of the members of CLS have taken steps to pursue expulsion of Mr. Rulh from CLS in accordance with CLS' Operating Agreement.

## CLS' Secrets and Confidential Information

33.   Over the years, CLS has developed and maintained trade secrets and other proprietary information, knowledge, and data, including without limitation, business policies, pricing, marketing, distribution, finances, and sales information and business plans, software and marketing tools, customer lists, lists of suppliers, management and administrative systems, and intellectual property rights (collectively, "Confidential Information").   Among CLS' most sensitive Confidential Information are its financial information and client lists.

34.   CLS has relationships with a number of clients that purchase contract labor from CLS.  CLS has developed these relationship over many years, and with substantial expenditure of time and resources.

35.   CLS maintains its Confidential Information as confidential within CLS and does not share this information outside of CLS.

36.   The Confidential Information is highly valuable, not generally known outside of CLS, and would be of significant value to CLS' competitors if known by them.  CLS derives a competitive advantage and independent economic value, both actual and potential, from the Confidential Information, because the Confidential Information is not generally known to the public or to others who can obtain economic value from its disclosure or use.

37.   CLS takes measures to preserve the secrecy of the Confidential Information.

**Mr. Rulh Misappropriated CLS' Confidential Information**

38. On March 9, 2018, the President and CEO of CLS, Spencer Sens, hosted a crawfish boil at his house for the employees of CLS.

39. Mr. Rulh was not invited to the crawfish boil.

40. Janet Pipitone, an employee of CLS that also performs certain work unrelated to CLS for Mr. Rulh was invited to the crawfish boil but did not attend.

41. During CLS' crawfish boil, certain Confidential Information was printed from CLS' financial system in its office in Harvey Louisiana.

42. Specifically, the following documents were printed: (1) CLS' Profit and Loss statements from January 2010 – March 2018; (2) a list of all CLS customers from January 2010 – March 2018, along with an itemization of the amounts spent by each customer with CLS; and (3) detailed monthly summaries itemizing the sales to each customer of CLS for the months of July 2017, August 2017, September 2017, October 2017, November 2017, December 2017, January 2018, February 2018, and March 1-9, 2018 (collectively, the "Misappropriated Trade Secrets").

43. Each of the foregoing documents was then scanned using a CLS scanner and emailed to "donaldrulh@gmail.com" between 1:27 pm and 2:47 pm on March 9, 2018.

44. "donaldrulh@gmail.com" is Mr. Rulh's personal email address to which CLS has no access. Copies of the March 9, 2018 email transmittals of CLS' confidential documents to Mr. Rulh's personal email address are attached hereto *in globo* as Exhibit "C."

45. Mr. Rulh's theft of CLS' Confidential Information and trade secrets did not end there. CLS subsequently discovered that three CLS internal and highly confidential financial documents were scanned and emailed to Mr. Rulh's personal gmail address on March 21, 2018

at 11:34 a.m.: (1) a multi-page CLS Profit & Loss Statement for 2018, including itemized and highly detailed breakdown of various costs and revenues, (2) a multi-page CLS Sales by Customer Summary for March 2018, including a detailed summary of sale by each CLS customer, and (3) a multi-page CLS A/R Aging Summary as of March 21, 2018 which details amounts owed by specific customers of CLS.  A copy of the March 21, 2018 email transmittal of CLS' confidential documents to Mr. Rulh's personal email address are attached hereto en globo as Exhibit "D."   Collectively, the confidential documents of CLS that were emailed to Mr. Rulh's personal email address on March 9 and 21, 2018 are the "Misappropriated Trade Secrets."

46.     Upon information and belief, Mr. Rulh, acting in concert with Ms. Pipitone obtained the Misappropriated Trade Secrets and emailed them to Mr. Rulh's private and personal gmail account.

47.     As a result of prior actions taken by the membership of CLS, Mr. Rulh was not authorized to take or obtain the Misappropriated Trade Secrets, and there was no legitimate business purpose for this information to be emailed to Mr. Rulh's personal email account.

48.     At no time was either Mr. Rulh or Ms. Pipitone or, for that matter, another other employee of CLS, authorized to disclose the Misappropriated Trade Secrets to Mr. Rulh personally.

49.     A fourth document was also emailed from the CLS scanner to Mr. Rulh on March 9, 2018.  That document purports to be a "Non-Disclosure Agreement" among Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Elwell, and Ms. Harris and is dated March 9, 2018.  CLS attaches as Exhibit "E" a copy of the "Non-Disclosure Agreement."

50.     The Non-Disclosure Agreement purports to facilitate the sharing of confidential information for the purpose of forming a business among the signatories to the Non-Disclosure Agreement.

51.     Upon information and belief, the information being shared by Mr. Rulh with Ms. Harris, Ms. Elwell, Mr. Baker, and Mr. Kahn pursuant to the Non-Disclosure Agreement includes the Misappropriated Trade Secrets.

52.     None of the signatories to the Non-Disclosure Agreement were or are authorized to receive the Misappropriated Trade Secrets.

**Mr. Rulh's Campaign of Harassment and Intimidation against CLS' Employees**

53.     After discovering Mr. Rulh's theft, on April 2, 2018, counsel for CLS sent letters to Mr. Rulh and his coconspirators advising them of the need to preserve information related to the theft and that this lawsuit may be forthcoming.

54.     After receiving the letter, Mr. Rulh sent a series of rambling emails to CLS' counsel, its members, and its employees.

55.     Those emails, several which were sent at 2:00 a.m., leveed a series of unfounded and often incoherent accusations against various individuals related to CLS.

56.     In one email, Mr. Rulh warned that he was about to launch an "offensive" against CLS and he purported to warn a number of CLS employees that they would all be called as witnesses in any litigation and implied that they should testify in his favor.

57.     Mr. Rulh's conduct, both before and after the preservation letter was sent, is disturbing at best and further demonstrates CLS' need for a temporary restraining order and a preliminary and permanent injunction to protect against further unlawful conduct from Mr. Rulh.

**Count I**
**Violation of Defend Trade Secrets Act, 18 U.S.C. §1836**

58.     CLS incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

59.     CLS' Confidential Information constitutes trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. §1836.

60.     CLS is headquartered in Louisiana but operates in other states, and regularly transacts business in states other than Louisiana, including in person and by phone, internet, and mail.  CLS' trade secrets relate to this business and are used by CLS in interstate commerce.

61.     Mr. Rulh acquired the Misappropriated Trade Secrets by improper means, including without limitation stealing CLS's records and receiving and using CLS' trade secrets while failing to disclose to CLS his improper and unlawful conduct.

62.     Upon information and belief, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell acquired the Misappropriated Trade Secrets by improper means, including without limitation by receiving the information from Mr. Rulh under circumstances which they knew or should have known to be improper.

63.     The Defendants, both individually and collectively, intend to use and, upon information and belief, have used CLS' trade secrets to compete against CLS.

64.     Mr. Rulh's, Mr. Baker's, Mr. Kahn's, Ms. Harris's, and Ms. Elwell's acts of misappropriation were willful and malicious.

65.     As a direct and proximate result of Mr. Rulh's, Mr. Baker's, Mr. Kahn's, Ms. Harris's, and Ms. Elwell's acts of misappropriation, CLS has suffered and will suffer irreparable harm and damages.  Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell have gained an

unfair competitive advantage and other unjust enrichment through the misuse of CLS' trade secrets.

66.     Under the Defend Trade Secrets Act, CLS is entitled to and requests a temporary restraining order and preliminary and permanent injunctive relief against Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell to prohibit their use of CLS' trade secrets.

67.     Under the Defend Trade Secrets Act, CLS is entitled to and requests an award of damages in its favor for actual loss caused by the misappropriation, damages for all unjust enrichment caused by the misappropriation that is not addressed in computing damages for actual loss, and/or damages measured by imposition of liability for a reasonable royalty for the unauthorized disclosure or use of CLS' trade secrets.

68.     Under the Defend Trade Secrets Act, CLS is entitled to and requests exemplary damages in an amount not more than two times CLS' actual damages, plus reasonable attorneys' fees.

## Count II
## Violation of Louisiana Uniform Trade Secrets Act, R.S. 51:1431 *et seq.*

69.     CLS incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

70.     CLS' Confidential Information constitutes trade secrets within the meaning of the Louisiana Uniform Trade Secrets Act, R.S. 51:1431 et seq.

71.     Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell acquired CLS' trade secrets by improper means, including without limitation stealing CLS' records and trade secrets.

72.     Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell intend to use and, upon information and belief, have used CLS' trade secrets, without CLS' express or implied consent.

73.     Mr. Rulh's, Mr. Baker's, Mr. Kahn's, Ms. Harris's, and Ms. Elwell's acts of misappropriation were willful and malicious.

74.     As a direct and proximate result of Mr. Rulh's, Mr. Baker's, Mr. Kahn's, Ms. Harris's, and Ms. Elwell's acts of misappropriation, CLS has suffered and will suffer irreparable harm and damages.  Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell have gained an unfair competitive advantage and other unjust enrichments through the misuse of CLS' trade secrets.

75.     Under the Louisiana Uniform Trade Secrets Act, CLS is entitled to and requests a temporary restraining order and preliminary and permanent injunctive relief against Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell to prohibit their use of CLS' trade secrets.

76.     Under the Louisiana Uniform Trade Secrets Act, CLS is entitled to and requests an award of damages in its favor for actual loss caused by Mr. Rulh's, Mr. Baker's, Mr. Kahn's, Ms. Harris's, and Ms. Elwell's misappropriation, and damages for all unjust enrichment caused by Mr. Rulh's, Mr. Baker's, Mr. Kahn's, Ms. Harris's, and Ms. Elwell's misappropriation that is not taken into account in computing damages for actual loss.

77.     Under the Louisiana Uniform Trade Secrets Act, as a result of Mr. Rulh's, Mr. Baker's, Mr. Kahn's, Ms. Harris's, and Ms. Elwell's willful and malicious misappropriation, CLS is further entitled to and requests an award of its reasonable attorneys' fees.

**Count III**
**Violation of Computer Fraud and Abuse Act, 18 U.S.C. §1030**

78.     CLS incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

79.     Mr. Rulh was not authorized to access, use, or disclose CLS' Confidential Information and owed a duty to CLS not to use or disclose CLS' Confidential Information against CLS' interests.

80.     Through the conduct CLS describes above, Mr. Rulh knowingly, improperly,  and in violation of his duties to CLS accessed CLS' proprietary and confidential electronic data that is stored on its secure and protected computer system.

81.     Mr. Rulh acted without authorized access and/or he exceeded his authorized access to CLS' computers.

82.     CLS has incurred and/or will incur expenses in excess of $5,000 over a one-year period in investigating the wrongful acts Mr. Rulh committed, assessing the resulting damages, and restoring or attempting to restore its computer systems and the data stored thereon to their condition prior to Mr. Rulh's wrongful acts.

83.     CLS has suffered damage and loss by reason of these violations, including without limitation, harm to CLS' data, programs, and computer systems and other losses and damage in an amount to be proved at trial, but, in any event, in an amount exceeding $5,000 aggregated over a one-year period.

84.     Under the Computer Fraud and Abuse Act, CLS is entitled to and requests an award of compensatory damages and injunctive and other equitable relief.

### Count IV
### Violation of Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401 *et seq.*

85.     CLS incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

86.     Defendants' actions as alleged herein constitute unfair competition and unfair or deceptive acts or practices in the conduct of trade or commerce, including without limitation

misappropriation of CLS' trade secrets, improper access to CLS' computer systems, breaches of duty, and fraud.

87.     Defendants' actions were immoral, unethical, oppressive, unscrupulous, and substantially injurious to CLS.

88.     Defendants violated Louisiana's Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401 *et seq.*

89.     As a direct and proximate result of Defendants' unfair competition and/or unfair or deceptive acts or practices, CLS has suffered an ascertainable loss of money and property, for which Defendants are liable.

90.     CLS is entitled to an award of reasonable attorneys' fees and costs, pursuant to La. R.S. 51:1409(A).

## Count V
## Unjust Enrichment

91.     CLS incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

92.     By reason of Mr. Rulh's improper conduct, Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell have been enriched.

93.     As a consequence of Mr. Rulh's, Mr. Baker's, Mr. Kahn's, Ms. Harris's, and Ms. Elwell's unlawful acquisition, use, and/or disclosure of CLS' Confidential Information, CLS has suffered an impoverishment.

94.     Mr. Rulh's, Mr. Baker's, Mr. Kahn's, Ms. Harris's, and Ms. Elwell's enrichment and CLS' impoverishment were without justification or cause.

95.     Should CLS have no remedy in law against Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and/or Ms. Elwell, they are bound to compensate CLS in an amount equal to their enrichment or CLS' impoverishment, whichever is less.

**Count VI**
**Conversion**

96.     CLS incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

97.     Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell acquired the Confidential Information in an unauthorized manner.

98.     Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell are in wrongful possession of the Confidential Information.

99.     Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell took and exercised control over the Confidential Information without authorization, and are now using or are planning to use the Confidential Information in direct competition with CLS.

100.     Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell have wrongfully exercised dominion and control over the Confidential Information.

101.     Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell have used and converted for their own benefit the Confidential Information.

102.     CLS has demanded that Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell return the Confidential Information, but they have not done so.

103.     CLS has suffered damages as a direct and proximate result of Mr. Rulh's, Mr. Baker's, Mr. Kahn's, Ms. Harris's, and Ms. Elwell's conversion of the Confidential Information.

## Count VII
## Breach of Fiduciary Duties of Loyalty and Due Care

104.    CLS incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

105.    As a member and/or employee of CLS, Mr. Rulh owed CLS duties, including fiduciary duties of loyalty and due care, and a duty to be loyal and faithful to CLS' interest in business.  At all relevant times, Mr. Rulh was duty bound not to act in antagonism or opposition to the interest of CLS.  This duty included the obligation to render a full and fair disclosure to CLS of all facts which materially affect CLS' rights and interests.

106.    Mr. Rulh's duties of loyalty and due care to CLS included, without limitation, duties not to act in opposition to CLS' interests, not to use his position for personal gain at the expense of CLS, not to use CLS' property and information, including, without limitation, the Confidential Information, for his own purpose or for the purpose of any third person, not to damage or attempt to damage CLS' computer systems, and not to misappropriate CLS' trade secrets.

107.    Mr. Rulh breached his duties to CLS when he engaged in dishonest and unlawful behavior, unfair trade practices, and theft for the purpose of his own financial or commercial benefit.  An action for breach of fiduciary duty based on misuse of a company's confidential information does not require that the information rise to the level of a trade secret.

108.    CLS has suffered damages as a direct and proximate result of Mr. Rulh's breaches of his fiduciary duties.

**Count VII**
**Injunctive Relief**

109.     CLS incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

110.     Pursuant to the Defendant Trade Secrets Act, 18 U.S.C. §1836(b)(3)(A), and the Louisiana Uniform Trade Secrets Act, R.S. 51:1432, CLS is entitled to an injunction preventing any actual or threatened misappropriation of its trade secrets by Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell, each of their agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of the foregoing (collectively, the "Covered Persons").

111.     This injunctive relief should include, without limitation, an Order prohibiting the Covered Persons from using or disclosing any of CLS's trade secrets, including, without limitation, the Confidential Information in any manner.  Further, the injunctive relief should include an Order requiring the Covered Persons to return to CLS, and not keep, any and all trade secrets of CLS, including, without limitation, any of the Confidential Information.

112.     Had Mr. Rulh not breached his duties and obligations to CLS—in particular, but without limitation, his duties not to act in opposition to CLS' interests, not to use his position with CLS for personal gain at the expense of CLS, not to use CLS' property and information, including, without limitation, the Confidential Information, for his own purpose or for the purpose of any third person and to disclose that he was engaged in negotiations, for his own benefit and contrary to the interests of CLS—none of the Covered Persons would have access to the Confidential Information.

113.     In addition, since CLS requested that Mr. Rulh preserve and return any evidence related to his theft, he has failed to return CLS' Confidential Information.  Mr. Rulh has also

failed to return, and continue to use and possess, the property of CLS, including an Apple -
MacBook Pro® - 15" Display - Intel Core i7 - 16 GB Memory - 256GB, the CLS Best Buy
receipt (SKU: 5721702), the receipt of which is attached as Exhibit "F."

114.    Instead of returning CLS' Confidential information and property, Mr. Rulh has
embarked on a campaign of harassment against CLS' counsel, members, and employees.  The
Fifth Circuit has explicitly held that injunctions prohibiting threatening and harassing
communication to a litigant is permitted. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559,
580 (5th Cir. 2005) (affirming injunction prohibiting litigant "from threatening or harassing
[plaintiff], its employees, its staff, [plaintiff]'s counsel, counsel's employees, or counsel's staff").

115.    CLS has a substantial likelihood of prevailing on the merits of its claims.

116.    Unless the Covered Persons are enjoined from the conduct described herein, there
is a substantial threat that CLS will continue to suffer irreparable harm, including loss and
misuse of the Confidential Information, loss of good will, and financial losses that are presently
not calculable.

117.    The irreparable harm that CLS will suffer if injunctive relief is denied outweighs
the potential harm (if any) to Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell if
injunctive relief is granted.

118.    An additional order should issue prohibiting Mr. Rulh from engaging in harassing
and threating conduct directed at CLS and/or its employees.

119.    Granting the requested injunctive relief will not disserve the public interest.

120.    CLS has no adequate remedy at law.

121.    CLS is entitled to a temporary restraining order and preliminary and permanent
injunctive relief as set forth herein.

**Count VIII**
**Conspiracy**

122.    CLS incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

123.    Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell conspired with each other to commit the intentional and willful acts alleged herein and are answerable, in solido, for the damages caused by all conduct alleged herein.

**Count IX**
**Fraud**

124.    CLS incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

125.     Mr. Rulh committed fraud by failing to disclose his self-dealing and actions with respect to his theft of the Misappropriated Trade Secrets despite an obligation to do so.

126.    Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.

127.    Fraud may result from misrepresentation or from silence.  La. Civ. Code art. 1953.

128.    By secretly absconding with CLS' confidential information and trade secrets, Mr. Rulh's intention was to obtain an unjust advantage for himself and co-conspirators and to cause a loss to CLS.

WHEREFORE, CLS respectfully requests that this Court:

1.    Enter judgment in its favor and against Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell and order Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell to pay damages to CLS, in an amount to be proved at trial, plus

interest, costs, exemplary damages, and attorneys' fees as allowed by law and/or contract;

2.  Enter a temporary restraining order and preliminary and permanent injunctions ordering that Mr. Rulh, Mr. Baker, Mr. Kahn, Ms. Harris, and Ms. Elwell, and each of their agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of the foregoing (collectively, the "Covered Persons"):

(a)  are restrained and enjoined from, directly or indirectly, disclosing or making any use of any trade secrets, confidential information, knowledge, data or other information of CLS, including without limitation, business policies, pricing, marketing, distribution, finances, and sales information and business plans, software and marketing tools, customer lists, lists of suppliers, management and administrative systems, and intellectual property rights (collectively, "Confidential Information");

(b)  must return to CLS, within 48 hours, any of the Confidential Information that is in their possession, custody, or control, including without limitation any electronically stored information or hard copy material; ");

(c)  must return to CLS, within 48 hours, any property of CLS that is in their possession, custody, or control, including without limitation the Apple - MacBook Pro® - 15" Display - Intel Core i7 - 16 GB Memory - 256GB, the CLS Best Buy receipt (SKU: 5721702), without deleting, over-writing, destroying, discarding, or otherwise altering any records, data, documents, evidence, communications (e.g. email, voicemail, text, or instant messages), or other information electronically stored on the computer;

(d)  must produce a list of all existing or former clients or customers of CLS that were contacted or solicited;

(e)  must produce a list of any and all computers, computer hard drives, PDAs, tablets, I-Pads, thumb drives, smart phones or like devices capable of storing electronic data in their possession or controlled by them;

(f)  must preserve all evidence that may be relevant to CLS' claims and not delete, over-write, destroy, discard, or otherwise alter any records, data, property, documents, evidence, communications (e.g. email, voicemail, text, or instant messages), or other information, including without

limitation any electronically stored information or hard copy material, that may be subject to discovery; and

(g)     must, after the preservation of evidence by the copying/mirroring of electronic information on the personal computing devices (including any desktop computers, laptop computers, tablets, or smart phones) of Cover Persons, return to CLS any Confidential Information that is in their possession, custody, or control, and to the extent that any such information is maintained in electronic form must, after such information is copied and returned to CLS, purge or destroy any electronic record of such information, in a manner that does not allow the Confidential Information to be retrieved or restored, and certify to CLS, under oath, that the Confidential Information has been thus purged or destroyed;

3.     Enter a temporary restraining order and preliminary and permanent injunctions ordering that Mr. Rulh and any of his agents, servants, employees, and other persons who are in active concert or participation with any of the foregoing is restrained and enjoined from threatening or harassing the employees and staff of Complete Logistical Services, LLC and its counsel.

4.     CLS demands a trial by jury.

5.     Grant CLS all other relief that the Court deems just and proper.

Dated:  April 10, 2018

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY:   _/s/ David L. Patrón_
      David L. Patrón (Bar #22566)
      Bruce V. Schewe (Bar #11771)
      Ashley J. Heilprin (Bar #34928)
      Arthur R. Kraatz (Bar #35194)
      Canal Place | 365 Canal Street, Suite 2000
      New Orleans, Louisiana 70130-6534
      Telephone: 504-566-1311
      Facsimile: 504-568-9130
      Email: patrond@phelps.com
      Email: scheweb@phelps.com
      Email: ashley.heilprin@phelps.com
      Email: arthur.kraatz@phelps.com

**ATTORNEYS FOR PLAINTIFF COMPLETE LOGISTICAL SERVICES, LLC**