UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COMPLETE LOGISTICAL SERVICES, LLC, | ) Civil Action No.: 18-3799 |
| | ) |
| | ) Judge: Eldon E. Fallon |
| Plaintiff, | ) |
| | ) Magistrate Judge: Michael North |
| versus | ) |
| | ) |
| DONALD RULH, JR., ARNOLD BAKER, MORRIS KAHN, MICHELLE ELWELL, AND SHAWANA HARRIS | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, Complete Logistical Services, LLC ("CLS"), respectfully submits this memorandum in opposition to the motion for partial summary judgment filed by Defendants Arnold Baker, Morris Kahn, Michelle Elwell, and Shawana Harris (collectively "Moving Defendants") (Rec. Doc. 52). The motion, which was filed before any discovery had been completed in this case and before the Court has held a hearing on Plaintiff's request for a preliminary injunction, contains several plain misstatements of fact and rests upon Defendants' self-serving assertion that they should not be liable for the misappropriation of CLS' trade secrets. The motion is meritless and should be denied because (1) Plaintiff has not had a sufficient opportunity to conduct discovery on its claims and (2) the sparse discovery conducted to date already reveals genuine disputes of material fact that require the denial of the motion.

**I.    BACKGROUND**

CLS is a Louisiana limited liability company that provides staffing and other support services for the maritime industry. CLS has several members, including Spencer Sens, Natchez

Morice, and Donald Rulh.[1]  Mr. Sens is the CEO of CLS and has been primarily responsible for running the business for the last several years.

While Mr. Rulh was a contributing member of CLS for a time, his conduct toward CLS and its members became erratic and bizarre in 2017.  While the full details of Mr. Rulh's behavior are not directly relevant to this motion, it is important to note that Mr. Rulh took a series of actions directly detrimental to CLS.  These actions culminated in his decision, in December 2017, to make an unauthorized withdrawal of $222,000 from CLS' bank account.  That unauthorized withdrawal nearly caused CLS to miss making timely payroll payments to its employees and actually caused scheduled bonus payments to be delayed for several months.  Those issues directly caused one key employee to resign from CLS.

Mr. Rulh's disturbing pattern of behavior, and his December theft, forced the remaining members of CLS to take action to protect CLS and its employees from Mr. Rulh.  In January of 2018, a majority of the members of CLS held a meeting in which they removed Mr. Rulh from any operational authority with respect to CLS, placed him on administrative leave, and began the process of expelling him from CLS.  Mr. Rulh received formal notification of these actions.

Mr. Rulh's conduct escalated again in March of 2018.  Despite the fact that the expulsion process was in full swing, that he had been made an assignee of the company pursuant to the Operating Agreement, and that he had no right to access the company's records, Mr. Rulh engineered the theft of a significant quantity of CLS' trade secrets from CLS, including the full list of CLS' customers and a substantial portion of CLS' financial data.  Mr. Rulh, either personally or acting through others, had these documents emailed to him using the company

---

[1] CLS has one additional member—Brett Casey.  While Mr. Rulh asserts several incorrect arguments regarding the validity of Mr. Casey's admission to CLS, that issue is irrelevant to the narrow dispute on this motion.

scanner. Also emailed to him on the company scanner was a copy of an agreement purportedly between himself, Arnold Baker, Morris Kahn, Michelle Elwell (a former employee of CLS), and Shawana Harris (then an employee of CLS). That agreement purported to facilitate the sharing of CLS' confidential information with the other Defendants for the purpose of opening a business to directly compete with CLS. When CLS discovered this theft, and learned that Mr. Rulh and his co-conspirators had stolen the information for the specific purpose of using it to CLS' detriment, CLS filed this lawsuit and obtained temporary injunctive relief preventing the Defendants from using that information during the pendency of the suit.

As part of the TRO process and with the consent of the parties, the Court established a protocol for the examination of certain electronic devices, including the CLS-owned laptop utilized by Mr. Rulh (Rec. Doc. 17). That process has been delayed multiple times because Defendants have had technical difficulties reviewing the electronic devices. As a result of those delays, Plaintiff only recently received copies of the hard drives from the CLS-owned desktops of Ms. Harris and Ms. Pipitone. Those devices are in the possession of Plaintiff's e-discovery vendor and Plaintiff should have access to those devices soon, but Plaintiff has not yet been able to begin the review process with respect to those devices. With respect to the laptop used by Mr. Rulh, Defendants only submitted their identification of purportedly privileged documents last week and Plaintiff does not yet even have possession of that device. In short, Plaintiff has not had any opportunity to review a single document on a single device subject to the Court's electronic discovery order.

Following the Court's entry of the temporary restraining order in this case, the parties served written discovery on each other. Defendants began serving responses to Plaintiff's

interrogatories and requests for production of documents on June 25, 2018. On June 26, 2018, before that production was completed, Moving Defendants filed this motion.

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its existence or nonexistence might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999). "The party opposing the motion is to be given the benefit of all reasonable doubt in determining whether a genuine factual issue exists." *Alabama Farm Bur. Mut. Cas. Co. v. American Fid. Life Ins. Co.*, 606 F.2d 602, 609 (5th Cir. 1979) (internal quotation omitted). Moreover, "[i]n general, a district court should not grant summary judgment before the parties have completed discovery." *Galaxy Tire, Inc. v. Terwilliger*, 189 F.3d 469, *2 (5th Cir. 1999). "This is especially true in cases . . . where motive and intent are factors that must be shown in order for the plaintiff to prove his cause." *Id.*

## III.    ARGUMENT

In this motion, Defendants assert two arguments. First, Elwell and Harris contend that they never possessed CLS' trade secrets. Second, Baker and Kahn contend that their receipt of CLS' trade secrets was innocent. Both arguments fail on the merits. Moreover, because the parties have only begun discovery related to the preliminary injunction hearing in this case, and have not begun merits discovery at all, the motion is premature and should be denied pursuant to Federal Rule of Civil Procedure 56(d).

### A. Genuine Disputes of Material Fact Preclude Summary Judgment

Moving Defendants assert slightly different arguments in support of their respective requests for dismissal. Nonetheless, because there are genuine disputes of material fact as to each defendant, summary judgment should be denied.

#### 1. Facts Discovered to Date

Because of the overlapping nature of the facts of this case, it is helpful to explain the evidence in a broader context before addressing the factual issues as to each individual defendant.

While there are numerous deficiencies with Defendants' initial discovery responses and document production, the few documents produced to date paint a compelling picture of a conspiracy amongst the defendants to steal CLS' trade secrets and use those secrets to CLS' direct detriment. For example, in February and March of 2018, prior to the theft of the trade secrets, Mr. Rulh and the Moving Defendants exchanged a series of emails discussing the formation of a new venture to compete with CLS to the direct and intended detriment of CLS. On March 6, 2018, Mr. Rulh sent an email to the Moving Defendants that promised "[w]ill also send over an NDA for all to sign before I send out a list of clientele that we will pursue."[2]

Three days later, on March 9, 2018, Mr. Rulh forwarded a Non-Disclosure Agreement ("NDA") to the Moving Defendants for their signature.[3] The purpose of the NDA was purportedly to facilitate the sharing of "Business Planning and Customer Information."[4] Later that same day, consistent with his promise to provide "a list of clientele that we will pursue" and

---

[2] Exhibit A, RULH003678-3712 (email chain discussing formation of new venture). The quoted material can be found at the bottom of page RULH003679. *See also* Exhibit B, RULH003825-3837 (email chain discussing formation of new venture and expressing Mr. Rulh's desire to "destabilize" CLS).

[3] Exhibit C, RULH002504-2511.

[4] Exhibit C at RULH002506.

"Customer Information" Mr. Rulh sent to the Moving Defendants an exhaustive list of CLS' customers from 2010-2018 along with detailed confidential information regarding the revenue CLS generated from each customer.[5] In his email transmitting CLS' trade secrets, Mr. Rulh proposed additional actions designed to directly harm CLS and stated that, as a result of his contemplated actions, "CLS could implode from within."[6] In separate correspondence Mr. Rulh expressed a desire to "destabilize" CLS.[7] Following the theft and dissemination of CLS' trade secrets, Defendants escalated their efforts to form the competing company. They reserved a name for the new company with the Louisiana Secretary of State[8] and exchanged draft organizational documents.[9]

While the above facts paint a disturbing picture that Defendants conspired to misappropriate CLS' trade secrets as part of a plan steal CLS' clients and destroy CLS, that is only a small part of the picture. CLS has uncovered that evidence of conspiracy, theft, and deceit despite Defendants' failure to substantively respond to a number of CLS' document requests and despite the fact that discovery is in its very early stages.

While it is not necessary to detail all of Defendants' various discovery failings, a few examples are illustrative. For example, in response to document requests served by CLS, Ms. Harris claimed not to have any responsive communications between her co-defendants, save the single four-page email chain she produced. Yet, her co-defendants produced over 20 documents

---

[5] Exhibit D, RULH002275-2288. Mr. Rulh apparently blind copied the Moving Defendants on the email transmitting the document, which the Moving Defendants undisputedly received.

[6] Exhibit D at RULH002275.

[7] *See* Exhibit B.

[8] Exhibit E, RULH002500-2503.

[9] Exhibit F, RULH002450-2452 (email from Morris Kahn to other Defendants promising to review "Corp docs and operating docs tonight"). Notably, Defendants have, to date, failed to produce the draft organizational documents in discovery—yet another basis to dismiss the present motion.

evidencing email chains on which she was copied. Thus, there are significant questions as to whether Ms. Harris made any effort to search for or produce responsive documents. Similarly, Ms. Elwell has taken discovery positions that are undeniably proven false contradicted by her co-defendants' document productions. She has falsely claimed, both in discovery and in connection with this motion, that she never received CLS' trade secrets, despite unequivocal evidence to the contrary.[10] In short, Defendants have produced evidence that, at an absolute minimum, creates a genuine dispute of material fact as to their involvement in a joint effort to misappropriate CLS' trade secrets, including CLS' customer list. While CLS addresses each defendant's arguments separately below, the above-described facts alone warrant denial of Defendants' improper motion.[11]

### 2. Michelle Elwell

Ms. Elwell insists that she never received CLS' trade secrets. That assertion is plainly false. Indeed, Donald Rulh, who is represented by the same counsel as Ms. Elwell, produced documents that unequivocally demonstrate Ms. Elwell received CLS' trade secrets.[12] At a minimum, the documents produced by Defendants create a genuine dispute of material fact as to

---

[10] *See* Exhibit G, *in globo*, RULH002241-002257 (email from Mr. Rulh to michele.elwell021@gmail.com transmitting CLS' profit and loss statements from 2010-2018); RULH002289-002301 (email from Mr. Rulh to michele.elwell021@gmail.com list of all CLS customers with revenue generated by customers from 1/1/2010-3/9/2018). *See also* Exhibit H, Michelle Elwell's Responses to Interrogatories at p. 6 (identifying michele.elwell021@gmail.com as her email address).

[11] It is also worth noting that Defendants' "evidence" in support of their motion, which consists entirely of unsworn discovery pleadings, including denials of requests for admission, is inadmissible on summary judgment. "Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994); *Viola v. United States*, No. 10-1959, 2011 WL 231025, at *6 (E.D. La. Jan. 21, 2011).

[12] *See* Exhibit G, *in globo*, RULH002241-002257 (email from Mr. Rulh to michele.elwell021@gmail.com transmitting CLS' profit and loss statements from 2010-2018); RULH002289-002301 (email from Mr. Rulh to michele.elwell021@gmail.com list of all CLS customers with revenue generated by customers from 1/1/2010-3/9/2018). *See also* Exhibit H, Michelle Elwell's Responses to Interrogatories at p. 6 (identifying michele.elwell021@gmail.com as her email address).

whether Ms. Elwell received CLS' trade secrets.[13] Thus, the motion should be denied as to Ms. Elwell.

### 3. Shawanna Harris

Ms. Harris also denies that she received CLS' trade secrets. As noted below, Plaintiff is entitled to additional discovery regarding, among other things, Ms. Harris's possible intentional spoliation of evidence. Nonetheless, there is already sufficient evidence to create a genuine dispute of material fact as to whether she received the trade secrets, including her receipt of various emails from Mr. Rulh promising to send CLS' customer list.

Specifically, Ms. Harris received Mr. Rulh's email promising to send the CLS client list and a copy of the NDA that purportedly needed to be signed in order to facilitate the sharing of that list.[14] Mr. Rulh's email transmitting the client list was, however, sent in a manner designed to obfuscate the recipients of the email. The emails produced by Defendants demonstrate that several Defendants received the email, even though their email addresses are not displayed in the "TO" field on the email. This, of course, indicates that Defendants were "blind-copied" on Mr. Rulh's email transmitting CLS' client list. Given the foregoing evidence, and Defendants' refusal to produce documents showing who received the client list, a reasonable jury could conclude that Ms. Harris received the client list in blind copy, like her co-defendants did.[15] Moreover, on the facts discovered to date, a reasonably jury could conclude that Ms. Harris's denial that she possessed CLS' trade secrets is simply a lie, especially since one of her co-defendants, Ms. Elwell, made a similar false denial despite Mr. Rulh's production of documents

---

[13] Defendants do not dispute in the motion that the documents at issue are CLS' trade secrets.

[14] *See* Exhibit A (promising to send client list), Exhibit C (sending NDA); *see also* Exhibit I, Ms. Harris' discovery responses identifying shawjos73@yahoo.com as her email address.

[15] *Compare* Exhibit D (email transmitting customer list produced by Mr. Rulh) *with* Exhibit J, Baker 000018-31 (copy of email transmitted to Mr. Baker).

clearly demonstrating her possession of the trade secrets. In short, there are genuine disputes of material fact as to whether Ms. Harris possessed CLS' trade secrets.

### 4. Arnold Baker and Morris Kahn

Mr. Baker and Mr. Kahn make the same argument in support of their request to be dismissed from this case. They insist that they did not request receipt of CLS' trade secrets and that they had "no prior knowledge" that Mr. Rulh intended to send them the trade secrets. They also allege that they cannot be held liable for receipt of CLS' trade secrets unless they intended to steal the trade secrets. Mr. Baker and Mr. Kahn are simply wrong on both the facts and the law.

First, there is a genuine dispute of material fact as to whether Mr. Baker and Mr. Kahn knew that Mr. Rulh was going to send them the trade secrets prior to his transmission of the emails. As noted above, several days before sending, among other things, CLS' client list Mr. Rulh specifically promised to send that to the Defendants.[16] That document alone creates a factual dispute as to whether Mr. Baker and Mr. Kahn knew about Mr. Rulh's theft of CLS' trade secrets.

Second, the federal Defend Trade Secrets Act is not as simple as Mr. Baker and Mr. Kahn argue. Essentially, Mr. Baker and Mr. Kahn claim that there is no evidence that they misappropriated CLS' trade secrets. The Defend Trade Secrets Act defines "misappropriation" more broadly than Defendants contend. Indeed, "misappropriation" includes the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means."[17] Thus, Defendants violated the Defend Trade Secrets Act if they acquired CLS' trade secrets under circumstances where they *had a reason to know* that the

---

[16] *See* Exhibit A.

[17] 18 U.S.C. § 1839(5)(A).

information was improperly acquired.[18] Thus, if Mr. Baker and Mr. Kahn had a reason to know that CLS' trade secrets had been improperly acquired, that is sufficient to warrant the imposition of liability. Of course, the fact that Mr. Rulh was providing them with commercially sensitive, confidential information of another company should be sufficient to put Defendants on notice that the conduct, at best, was highly questionable.

At this stage of the proceeding, there is a genuine dispute of material fact regarding whether Mr. Baker and Mr. Kahn knew that CLS' trade secrets had been improperly obtained. As noted above, in the days prior to Mr. Rulh's theft of the trade secrets, he sent a series of emails discussing his intent to steal the trade secrets and his desire to utilize the trade secrets against CLS in an effort to cause it to "implode from within." Given their receipt of those emails leading up to the theft of the trade secrets, there is substantial evidence that Mr. Baker and Mr. Kahn knew, or at the absolute minimum, had a reason to know that the trade secrets had been improperly obtained. Accordingly, summary judgment should be denied.

### B. Summary Judgment is Premature

While Defendants' motion can (and should) be denied on the merits, there is another important reason to deny the motion. At this very early stage of the proceedings, summary judgment is simply premature. While the parties have begun limited discovery in advance of the preliminary injunction hearing, merits discovery has not begun and the Court has not yet entered a scheduling order. Defendants have served largely deficient responses to Plaintiff's written discovery and no depositions have been taken. Accordingly, Defendants' Motion is, at best, grossly premature. *See Galaxy Tire, Inc.*, 189 F.3d 469, at *2 ("In general, a district court should not grant summary judgment before the parties have completed discovery"). Therefore, if the

---

[18] *Id.* To be clear, the remaining provisions of § 1839 may also apply to Defendants' conduct. At this stage, however, the clear application of § 1839(5)(A) is sufficient to deny summary judgment.

Court is not inclined to deny Defendants' summary judgment motion on the merits, CLS requests, pursuant to Fed. R. Civ. P. 56(d), that the Court deny Defendants' motion pending the completion of discovery.

"Rule 56(d) allows the district court to provide additional time for discovery before ruling on a motion if the nonmovant shows an inability to support its opposition factually." *Smith v. Regional Transit Auth.*, 827 F.3d 412, 422–23 (5th Cir. 2016). "Rule 56(d) motions for additional discovery are broadly favored and should be liberally granted." *American Family Life Assur. Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013). In fact, Rule 56(d) motions "should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 920 (5th Cir. 1992) (citing prior, but substantively identical, version of rule). "An affidavit or declaration showing that the nonmovant cannot present facts essential to its opposition is not strictly required; the nonmovant may simply set forth some statement to the court indicating why additional discovery is needed and how it would create a genuine issue of material fact." *Mitchell v. Hood*, No. CV 13-5875, 2016 WL 1059005, at *3 (E.D. La. Mar. 17, 2016).

In this case, there should be little question that additional discovery is necessary. Indeed, there a several significant issues that warrant further investigation in discovery.

First, while the Court has established a protocol for the examination of electronic devices based on the consent of the parties, that process is still in its infancy. Defendants only received copies of the hard drives from Ms. Harris and Ms. Pipitone's (another former employee of CLS) computers last week. CLS' e-discovery vendor is in the process of preparing those devices for review, but CLS has not yet had the chance to actually review any documents from those devices. Moreover, the CLS laptop in Mr. Rulh's possession has not yet been produced to CLS

because Defendants only completed their privilege review a few days ago. Thus, CLS has not had any meaningful opportunity to discover or review electronic correspondence between the parties.

Second, there are several very significant spoliation issues that need to be explored. By way of background, Ms. Harris was still an employee of CLS when the trade secrets were stolen. Upon discovery of her role in the effort to steal the trade secrets, CLS terminated her employment.[19] Upon her termination, she was asked to return her CLS' owned laptop and cell phone to CLS. At the time of her termination, her CLS laptop was at home and she returned it the following day. When she returned it, the hard drive was blank.[20] Moreover, she used her Apple iCloud account to send a factory reset code to her CLS cell phone, thus deleting all information from that device. While CLS is still in the process of developing this information, these facts raise significant questions as to whether Ms. Harris committed intentional spoliation of evidence—questions that can only be answered through discovery.

Third, CLS has filed a motion to compel because Defendants have woefully failed to serve complete responses to CLS' initial discovery requests. Indeed, despite producing documents clearly indicating that additional responsive documents exist, Defendants have omitted whole categories of significant documents from their production.

Fourth, CLS has alleged a conspiracy claim and the documents uncovered to date provide initial support to that claim. As the Court knows, if Defendants conspired to commit the acts

---

[19] Ms. Harris has filed a retaliatory lawsuit against CLS asserting a series of exaggerated and meritless allegations related to her employment with CLS. That lawsuit was recently transferred to this section as a related case.

[20] To be clear, the hard drive contained no data of any kind. Even the operating system for the laptop had been erased.

alleged in the Complaint, then each defendant is liable for the actions of each other defendant.[21] Thus, the nature and extent of the agreements among Defendants are yet another important topic of discovery.

Finally, CLS reasonably anticipates that the foregoing discovery, and discovery that may be conducted as a result of additional facts discovered, will reveal substantial facts that would result in denial of this motion. Those facts include, but are not limited to: (1) the extent to which the Defendants collaborated on the theft of CLS' trade secrets; (2) the extent to which the Defendants knew about Mr. Rulh's plans to steal the trade secrets; (3) the extent to which Ms. Harris and/or the other Defendants have committed intentional spoliation of evidence; and (4) the extent to which the Defendants conspired to intentionally harm CLS.

There is good reason to believe that CLS will discover facts unfavorable to Defendants with respect to all of the above-identified categories. Indeed, as noted above, CLS has *already* discovered significant evidence demonstrating that Defendants had advance notice of and willingly participated in Mr. Rulh's plan to steal CLS' trade secrets. These significant outstanding issues warrant denial of Defendants' motion pursuant to Rule 56(d), if not on the merits.

### C. There is No Basis to Dismiss the Other Claim Asserted Against Defendants

At the end of Defendants' motion, they assert in conclusory fashion (and without citation to any authority) that CLS' other claims against Defendants must be dismissed if the Defend Trade Secrets Act claim is dismissed. Defendants' conclusory argument, which does not even purport to analyze the remaining claims, is insufficient to demonstrate that they are entitled to summary judgment. Moreover, the sole argument advanced by Defendants on the other claims

---

[21] *See e.g.*, *Currier v. Entergy Servs., Inc.*, No. 11-2208, 2014 WL 4450360, at *2–3 (E.D. La. Sept. 10, 2014).

against them—that those claims fail because the trade secrets claim fails—must be rejected because there are genuine disputes of material fact as to the viability of the trade secrets claim. Finally, as noted above, summary judgment is procedurally inappropriate on any claim at this time because the parties have not begun, much less completed, merits discovery.

## IV. CONCLUSION

The evidence produced by Defendants to date already creates significant disputes of material fact that warrant the denial of Defendants' grossly premature and meritless motion. The outstanding concerns regarding the content of the electronic devices at issue in this litigation and the possible intentional spoliation of evidence alternatively warrant denial of the motion. For either, and both, reasons, Defendants motion is premature and meritless and should be denied in full.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: */s/ Arthur R. Kraatz*
David L. Patrón (Bar #22566)
Bruce V. Schewe (Bar #11771)
Ashley J. Heilprin (Bar #34928)
Arthur R. Kraatz (Bar #35194)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Facsimile: 504-568-9130
Email: patrond@phelps.com
Email: scheweb@phelps.com
Email: ashley.heilprin@phelps.com
Email: arthur.kraatz@phelps.com

**ATTORNEYS FOR PLAINTIFF COMPLETE LOGISTICAL SERVICES, LLC**

**CERTIFICATE OF SERVICE**

I certify that, on this 24th day of July, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

/s/ Arthur R. Kraatz