UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COMPLETE LOGISTICAL SERVICES, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-3799** |
| **DONALD RULH, JR. ET AL** | **SECTION "L" (5)** |

## ORDER & REASONS

Before the Court is Defendant Donald Rulh's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). R. Doc. 103. Plaintiff Complete Logistical Services, LLC ("CLS") opposes the motion. R. Doc. 113. Defendant has filed a reply. R. Doc. 123. Having considered the applicable law, the parties' arguments, and having held oral argument on the motion, the Court is ready to rule.

I.  BACKGROUND

CLS provides contract labor to various marine industries. It alleges its former member, Defendant Rulh, breached his fiduciary duties to CLS, misappropriated CLS' assets, damaged CLS' image, and took confidential and proprietary information after he was removed from the LLC by its remaining members. R. Doc. 98 at 1–3.

In its verified complaint, CLS alleges that, as a result of Mr. Rulh's failure to collect payments from clients; refusal to reimburse the LLC for money he borrowed to refinance his private home; arriving intoxicated to company events; and changing the locks on the CLS office without first discussing the matter with the other LLC members, the other three members of CLS voted to treat Mr. Rulh as "an assignee of the Company," thereby revoking his authority to manage the business or act unilaterally for the business. R. Doc. 98 at 4–6. CLS alleges that after Mr. Rulh was stripped of this authority, he stole from CLS confidential information including financial

1

statements, customer lists, and sales records while the other members were at a company crawfish boil. R. Doc. 98 at 8. According to CLS, these documents were printed, scanned, and then emailed to Mr. Rulh's personal email account. R. Doc. 98 at 8. CLS further alleges Mr. Rulh took this information intending to start a competing business with his co-Defendants. In support of this allegation, CLS points to a non-disclosure agreement between the Defendants, which CLS included as an attachment to its complaint. R. Doc. 98-5. Additionally, Plaintiff alleges Mr. Rulh took $222,000.00 from the LLC's bank account without authorization.

Based on these allegations, CLS brings claims against Defendants Donald Rulh, Arnold Baker, Morris Kahn, Michelle Elwell, and Shawana Harris for violations of the Defend Trade Secrets Act ("DTSA"); Louisiana Uniform Trade Secrets Act ("LUTSA"); Computer Fraud and Abuse Act ("CFA"); Louisiana Unfair Trade Practices Act ("LUTPA"); and for unjust enrichment; breach of fiduciary duties, duty of loyalty, and duty of due care; conversion; conspiracy; and fraud. R. Doc. 98 at 3. CLS also seeks injunctive relief. R. Doc. 98 at 4. Moreover, CLS submits that, after it initially filed suit, its remaining members "availed themselves of their rights in the CLS Operating Agreement to expel Mr. Rulh from CLS membership." R. Doc. 98 at 4. In its amended complaint, Plaintiff seeks a declaration "that the expulsion proceedings were proper in all respects and confirming that Mr. Rulh is no longer a member of CLS." R. Doc. 98 at 4.

a. **Procedural History**

On April 12, 2018, pursuant to CLS' request for a temporary restraining order ("TRO"), the Court held a telephone hearing with CLS and granted the request. Pursuant to the TRO, the Court directed Defendants to return materials taken from CLS, including a computer allegedly purchased with CLS funds. R. Doc. 8. On April 13, 2018, Defendant moved for an extension of the deadline to comply with the Court's order, R. Doc. 10, which the Court granted in part, R. Doc. 11.

On April 16, 2018, Defendants moved to dissolve the temporary restraining order. R. Doc.

13. The Court held oral argument on Defendants' motion that same day. The Court determined the TRO should remain in effect as to the prohibitory elements and ordered the parties to discuss a plan to determine which information, if any, may be privileged and which should be returned to Plaintiff. On Wednesday, April 18, 2018, the Court approved the parties proposed order for mirroring the files on the computer and other devices held by counsel. R. Doc. 17.

On May 7, 2018, Defendants answered the complaint and filed counterclaims against CLS and a third party complaint against CLS members Spencer Sens and Natchez Morice, III. R. Doc. 30. On August 21, 2018, the Court granted Mr. Sens and Dr. Morice's motion to strike Defendants' third party claims against them. R. Doc. 94.

In their counterclaim, Defendants claim CLS wrongfully seized information from them in violation of the DTSA and the LUTPA. Additionally, Mr. Rulh brings claims against CLS for breach of fiduciary duties and due care, breach of contract, unjust enrichment, conversion, and derivative action. Mr. Rulh also seeks an accounting of CLS. R. Doc. 30 at 18–24. On June 25, 2018, Plaintiff moved to dismiss Defendants' counterclaims. On August 21, 2018, the Court granted the motion in part, dismissing Defendants' LUTPA claim and Defendant Rulh's claims for unjust enrichment, conversion, and derivative action. R. Doc. 93.

On June 26, 2018, Defendants Harris, Elwell, Baker, and Kahn filed a motion seeking summary judgment on Plaintiff's claims against them. R. Doc. 52. The Court denied the motion as premature on August 21, 2018. R. Doc. 92.

On September 13, 2018, Defendant Rulh filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). R. Doc. 103. Defendants Harris, Elwell, Baker, and Kahn did not join in the motion. In his motion, Defendant Rulh argues Plaintiff has failed to state a federal claim upon which relief may be granted and, as a result, the Court lacks subject matter jurisdiction over the action.

## II. DISCUSSION

Defendant argues CLS has failed to allege facts that give rise to a plausible claim for relief under either of Plaintiff's two federal law-based claims: the DTSA and the CFAA.[1] With respect to the DTSA, Defendant argues this cause of action must be dismissed, as Plaintiff: (1) failed to allege a viable trade secret, as the information it alleges Defendant took is generally known and readily ascertainable; (2) does not allege it took reasonable measures to keep its information secret; (3) has not alleged facts sufficient to establish any trade secrets were misappropriated; and (4) fails to allege more than a conclusory nexus to interstate commerce. With respect to the CFAA, Defendant argues CLS failed to allege facts that give rise to a plausible claim for relief, as Plaintiff fails to allege his actions caused any damage to CLS's computers or any interruption in service when he allegedly accessed CLS's confidential information without authority. Rather, according to Defendant, Plaintiff "merely regurgitates statutory language without any real factual support, which cannot support a plausible claim for relief." R. Doc. 103-2 at 20.

CLS filed its opposition on October 2, 2018. R. Doc. 113. First, it argues Defendant's motion to dismiss for lack of jurisdiction should be denied as procedurally improper, arguing that, because CLS alleged federal causes of action, the Court must exercise jurisdiction over its complaint. Second, because Defendant attaches his sworn declaration with his motion to dismiss, CLS argues Defendant's motion should be construed as a Rule 56 motion for summary

---

[1] In his motion, Defendant seeks dismissal of Plaintiff's DTSA and CFAA claims, but does not move to dismiss Plaintiff's claim brought pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, which is a federal law based claim. However, it is well settled that the DJA does not expand the subject matter jurisdiction of the federal courts. *Franchise Tax Bd. of the State of Ca. v. Const. Laborers Vacation Trust for S. Ca.*, 463 U.S. 1, 15–16 (1983) (quoting *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950)); *Comstock Oil & Gas Inc. v. Ala. and Coushatta Indian Tribes of Tex.*, 261 F.3d 567, 573 n.5 (5th Cir. 2001). Thus, a DJA claim, standing alone, does not confer Federal subject matter jurisdiction.

judgment, which it submits should be denied as premature. R. Doc. 113 at 6. Finally, Plaintiff avers that, to the extent Defendant's motion is considered one filed pursuant to Rule 12(b)(6), it has pleaded facts sufficient to state a claim for relief under both the CFAA and DTSA.

## III. LEGAL STANDARD

### a. Motion to Dismiss Standard

Where a motion to dismiss for lack of jurisdiction is limited to a facial attack on the pleadings, as here, it is subject to the same standard as a motion brought under Rule 12(b)(6). *See Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008); *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). In either case, the Court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Lane*, 529 F.3d at 557; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Generally, when evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court should not look past the pleadings.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The district court must construe facts in the light most favorable to the nonmoving party and must accept as true all factual allegations contained in the complaint. *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court "do[es] not accept as true

conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

## IV. ANALYSIS

Defendant argues Plaintiff's federal claims against him are "wholly insubstantial" and brought "solely for the purpose of obtaining jurisdiction." R. Doc. 123. He moves for dismissal of both pursuant to Rule 12(b)(1). Because Defendant's arguments for the dismissal of both claims constitute a facial attack on the pleadings, however, the Court analyzes each under the Rule 12(b)(6) standard. *See Lane*, 529 F.3d at 557.

### a. Defend Trade Secrets Act

To state a claim under the DTSA, a plaintiff must allege (1) the existence of a trade secret, (2) misappropriation of the trade secret by another, and (3) the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce. 18 U.S.C. § 1836(b)(1); *see also Source Prod. & Equip. Co., Inc. v. Schehr*, No. 16-17528, 2017 WL 3721543, at *2 (E.D. La. Aug. 29, 2017) (Vance, J.). The Court considers each element in turn.

#### i. The existence of a trade secret

A "trade secret" under the DTSA includes scientific and technical information that "the owner thereof has taken reasonable measures to keep . . . secret" and "derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

Plaintiff's amended complaint alleges Defendant took profit and loss statements, customer lists, and sales analyses without authorization. Defendant argues these cannot be considered trade secrets, as he can ascertain the list through memory and because Plaintiff's clients are generally known in the industry. Plaintiff responds, pointing out that in its complaint, it alleges these

6

documents were protected and not shared with anyone outside of CLS. R. Doc. 113 at 9. Finally, Plaintiff submits Defendant is estopped from arguing these are not trade secrets, as on the day he stole them, he submitted a non-disclosure agreement to his co-Defendants in which he asserted that the documents at issue were trade secrets. *Id.* (citing R. Doc. 98-5 at 1 ("'Confidential Information' . . . include[s] . . . financial information or projections, . . . and customer or supplier lists . . . .")).

Courts in this circuit have held that customer lists can be considered trade secrets. For example, in *Alfasigma USA, Inc. v. EBM Medical, LLC*, No. 17-7753, 2018 WL 1604961, at *1 (E.D. La. Apr. 3, 2018) (Lemelle, J.), the plaintiff alleged the defendants violated the DTSA when they "used [the plaintiff's] confidential customer lists in order to market [their products] to [the plaintiff's] customers." In analyzing the defendants' motion to dismiss, the district court concluded that the plaintiff had sufficiently pleaded the existence of a trade secret, as the plaintiff's complaint "set[] forth allegations regarding the formulation of its [products], as well as customer lists and other information used to market [its products]." *Id.* at *3. The district court also noted that the definition of a trade secret under the DTSA is broad, and includes "information that derives independent economic value from not being generally known to or ascertainable by other persons, that is the subject of reasonable efforts to maintain the information's secrecy." *Id.*[2] Notably, even if a compilation of information consists of "readily available" information, "it may be protected as a trade secret given the difficulty and expense of compiling the information." *360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*, No. 14-00847, 2016 WL 900577, at *4 (W.D. Tex. Mar. 2,

---

[2] *See also SPBS, Inc. v. Mobley*, No. , 2018 WL 4185522, at *4 (E.D. Tex. Aug. 31, 2018) (finding pricing, contracts, customer lists, and client contacts were trade secrets); *BRG Insurance Solutions, LLC v. O'Connell*, No. 16-2448, 2017 WL 7513649, at *8 (N.D. Tex. July 18, 2017) (finding plaintiffs had stated a claim under the DTSA based on the allegation defendant had stolen their client list); *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 920–21 (N.D. Ill. 2016) (holding that a complaint was well-pleaded when it identified the purported trade secrets as including "business models, . . . business plans, and product development plans").

2016) (citing *Zoecon Indus. v. Am. Stockman Tag Co.*, 713 F.2d 1174, 1179 (5th Cir. 1983)).

Moreover, "existing state law on trade secrets informs the Court's application of the DTSA." *Source Prod. & Equip. Co. v. Schehr*, No. 16-17528, 2017 WL 3721543, at *2 (E.D. La. Aug. 29, 2017) (Comparing 18 U.S.C. §§ 1836, 1839, with LUTSA § 1); *see also JJ Plank Company, LLC v. Bowman*, No. 18-0798, 2018 WL 3579475, at *3–4 (W.D. La. July 25, 2018). Louisiana courts have routinely held customer lists may constitute a trade secret. *See Pontchartrain Med. Labs., Inc. v. Roche Biomedical Labs, Inc.*, 677 So. 2d 1086, 1090 (La. App. 1 Cir. 1996); *Wyatt v. P02, Inc.*, 651 So. 2d 359 (La. App. 2d Cir. 1995).

In this case, Plaintiff alleges Defendant "accessed CLS' proprietary and confidential electronic data" including Plaintiff's its financial statements, customer lists, and sales records, which are kept on Plaintiff's "secure and protected computer system." R. Doc. 98 at ¶ 98. Moreover, Plaintiff alleges it "maintains its Confidential Information as confidential within CLS and does not share this information outside of CLS," R. Doc. 98 at ¶ 38, which Plaintiff alleges makes the information "highly valuable." *Id.* at ¶ 39. Finally, Plaintiff alleges it "derives a competitive advantage and independent economic value, both actual and potential, from the Confidential Information, because the Confidential Information is not generally known to the public or to others who can obtain economic value from its disclosure or use." The Court finds Plaintiff has sufficiently alleged the existence of a trade secret.

To the extent Defendant argues this information cannot be considered trade secrets because he can recall the information from memory, such arguments require the Court to look beyond the pleadings and are therefore inappropriate at the motion to dismiss stage. Even if the Court could consider Defendant's declaration at the motion to dismiss stage, the case to which Defendant points in support of his assertion, *Weighing & Control Services, Inc. v. Williams*, No. 88-5211, 1989 WL 6011 (E.D. La. Jan. 24, 1989), does not stand for such a proposition. First, in *Weighing & Control*

*Services, Inc.*, the Court considered the application of the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA–R.S. 51:1401. Second, with respect to former employee's ability to recall information gleaned from his time with the company, the Court stated, "Louisiana courts have consistently declined to issue an injunction against a former employee's solicitation of customers when the former employee relied on his memory *and did not have a list*." *Weighing & Control Services, Inc.*, 1989 WL 6011 at *2 (emphasis added).

### ii. Misappropriate of the Trade Secret

The DTSA defines "misappropriation" as:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(B) disclosure or use of a trade secret of another without express or implied consent by a person who—
    (i) used improper means to acquire knowledge of the trade secret;
    (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
      (I) derived from or through a person who had used improper means to acquire the trade secret;
      (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
      (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
(iii) before a material change of the position of the person, knew or had reason to know that—
    (I) the trade secret was a trade secret; and
    (II) knowledge of the trade secret had been acquired by accident or mistake . . . .

18 U.S.C. § 1839(5). The statute further defines improper means as including "breach or inducement of a breach of a duty to maintain secrecy." *Id.* § 1839(6)(A).

In his motion to dismiss, Defendant argues Plaintiff has failed to allege he took trade secrets by improper means, as he was "arguably . . . still a member of CLS." R. Doc. 103-2 at 15. In opposition, Plaintiff submits it alleges in its complaint that, at the time Mr. Rulh took the documents, he had no authority to do so. Thus, because on a motion to dismiss the Court must accept all well-pleaded facts as true, Plaintiff contends the Court must assume Defendant took these trade secrets without authority.

9

Plaintiff's complaint alleges Mr. Rulh took its trade secrets after the LLC voted to treat Mr. Rulh as "an assignee of the Company," thereby revoking his authority to manage the business or act unilaterally for the business. R. Doc. 98 at 4–6. Plaintiff further alleges that, having been stripped of his authority, Defendant was not authorized to take the information he did. Finally, Plaintiff alleges Defendant used this information to form a company with his co-Defendants that will compete with CLS in the industry. Construing the allegations in Plaintiff's complaint as true, as the Court must, the Court finds Plaintiff has sufficiently alleged Defendant misappropriated its trade secrets as defined by the DTSA. *See* 18 U.S.C. § 1839(5)(A), (B)(i) (defining misappropriation as *inter alia* "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "[the] use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret").

### iii. Interstate or foreign commerce

Finally, Defendant argues Plaintiff has failed to plead the jurisdictional nexus required under the DSTA. In opposition, Plaintiffs submit Mr. Rulh offers no authority from the Fifth Circuit for his position that CLS is required to plead a jurisdictional nexus. However, Plaintiffs contend that, even assuming such a requirement exists, CLS has satisfied this pleading requirement, particularly since Mr. Ruhl's theft of trade secrets pertained in part to CLS' out-of-state clients. Thus, Plaintiffs argue it has met its pleading burden by alleging CLS intended to use its trade secrets, which include marketing, pricing, sales, and business information, in interstate commerce by soliciting business across state lines.

In *Wells Lamont Industry Group LLC v. Richard Mendoza and Radians, Inc.*, No. 17-1136, 2017 WL 3235682, at *3 (N.D. Ill. Jul. 31, 2017), the U.S. District Court for the Northern District of Illinois held that the plaintiff established a jurisdictional nexus by alleging the plaintiff had

scheduled a meeting to do business across state lines, even though that meeting was subsequently cancelled. *Id.* Based on this meeting, the court held it was reasonable to infer the plaintiff's goods, and thus trade secrets, were intended for use in interstate commerce. *Id.*

In this case, Plaintiff alleges "CLS is headquartered in Louisiana but operates in other states, and regularly transacts business in states other than Louisiana, including in person and by phone, internet, and mail. CLS' trade secrets relate to this business and are used by CLS in interstate commerce." R. Doc. 98 at ¶ 78. Moreover, Plaintiff has provided the Court with its customer list, R. Doc. 66-12, which includes several out of state customers. As a result, to the extent Plaintiffs are required to plead a jurisdictional nexus in order to invoke the DTSA's protections, Plaintiffs have adequately done so.

Because Plaintiff adequately pleaded the DTSA's essential elements, the Court finds it has jurisdiction over this action. Defendant's motion to dismiss with respect to this claim is denied.

### b. Computer Fraud and Abuse Act

The CFAA prohibits unauthorized access to a "protected computer," as defined by 18 U.S.C.A. § 1030(e)(2), for the purposes of obtaining information, causing damage, or perpetrating fraud, 18 U.S.C. § 1030(a)(2). The CFAA defines "protected computer" as "a computer . . . which is used in or affecting interstate or foreign commerce or communication." 18 U.S.C.A. § 1030(e)(2)(B). "Pleading specific facts that the defendant accessed a computer connected to the internet is sufficient to establish that the accessed computer was 'protected.'" *Merritt Hawkins & Associates v. Gresham*, 948 F. Supp. 2d 671, 674 (N.D. Tex. 2013) (citing *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007) (holding that the accessed computer was "protected" because defendant "admitted the computers were connected to the Internet"); *Becker v. Toca*, No. 07-7202, 2008 WL 4443050, at *5 (E.D. La. Sept. 26, 2008) (finding the plaintiff sufficiently pleaded the computer was "protected" because he claimed "computers were connected to the internet")).

11

To state a civil CFAA claim, a plaintiff must allege that one of the first five factors listed in 18 U.S.C. § 1030(c)(4)(A)(i) is present. *See* 18 U.S.C. § 1030(g). In this case, CLS alleges the first factor, a "loss" during a one-year period of at least $5,000 in value. *See* § 1030(c)(4)(A)(i)(I). "Loss" is defined under the CFAA as:

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

18 U.S.C. § 1030(e)(11).

Defendant first argues Plaintiff has failed to allege its damages were caused as a result of an "interruption of service." He points to *Meyers v. Siddons-Martin Emergency Group LLC*, No. 16-1197, 2016 WL 5337957 (E.D. La. Sept. 23, 2016) in support of this position. In *Meyers*, the district court stated, "A 'loss,' as contemplated by the CFAA, is only recoverable when it results from an 'interruption of service,' impairment or unavailability of data, or an unavailability of systems." *Id.* at *3 (citing *Nexans Wires S.A. v Sark-USA, Inc.*, 166 F. App'x 559, 562–63 (2d Cir. 2006)). The court found that, although the plaintiff alleged he had incurred damage "related to [the plaintiff's] actions in investigating, responding to, and neutralizing the acts of the defendants," the court dismissed the plaintiff's CFAA claim, stating, "Because [the plaintiff] has not asserted any claims which arise due to actual computer damage or interruption of computer service, he has not alleged a cognizable loss under the CFAA." *Id.*

Plaintiff responds, arguing *Meyers* was decided incorrectly as it "is at odds with virtually every other case on this issue, and has not been followed in subsequent cases." R. Doc. 113 at 16. It points to *L-3 Communications Westwood Corp. v. Robicharux*, in which the district court explained, "The meaning of 'Loss' both before and after the term was defined by statute, has consistently meant a cost of investigating or remedying damage to a computer or a cost incurred

12

because the computer's service was interrupted." No. 06-0279, 2007 WL 756528, at *3 (E.D. La. Mar. 8, 2007) (quoting *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004), *aff'd* 166 F. App'x 559 (2006)).

Although the Fifth Circuit has not yet ruled on this issue, several of our sister circuits have held that the plain language of the statutory definition includes two separate types of loss: (1) reasonable costs incurred in connection with such activities as responding to a violation, assessing the damage done, and restoring the affected data, program system, or information to its condition prior to the violation, as Plaintiff alleges here; and (2) any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service. *See Brown Jordan International, Inc. v. Carmicle*, 846 F.3d 1167, 1173–74 (11th Cir. 2017); *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1073–74 (6th Cir. 2014); *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009); *see also* 18 U.S.C. § 1030(e)(11). Because the statute is written in the disjunctive, it is only the second type of loss that requires a plaintiff to plead its losses resulted from an interruption in service. On the other hand, the first type of loss may be alleged independent of an interruption of service. In sum, "'Loss' includes the direct costs of responding to the violation in the first portion of the definition, and consequential damages resulting from interruption of service in the second." *Brown*, 846 F.3d at 1174.

The Court finds that, as a matter of law, a Plaintiff alleging a violation of the CFAA is not required to plead that its damages were the result of an interruption in service. Thus, under a plain reading of the statute, the nature of Plaintiff's alleged loss from Defendants' violation of the CFAA is sufficient.

Next, Defendant contends Plaintiff's allegation with respect to its loss calculation is conclusory and therefore does not sufficiently substantiate the allegation. CLS responds by pointing out that it alleges Defendant accessed its confidential information on its protected

computer system without authorized access. R. Doc. 98 at ¶ 98. Moreover, Plaintiff submits the amended complaint alleges that CLS will expend more than $5,000 over a one-year period investigating the Defendants' conduct, assessing the resulting damages, and restoring or attempting to restore its computer systems to the condition they were in prior to Defendants' wrongful conduct. R. Doc. 98 at ¶ 100.

In *Oil States Skagit Smatco, LLC v. Dupre*, No. , 2010 WL 2605748, at *3 (E.D. La. June 21, 2010), the district court granted the defendants' motion to dismiss, concluding the plaintiffs had failed to substantiate their loss calculation. The court explained that that, although the plaintiff alleged it was "forced 'to hire a local computer service provider to make a complete back-up of [his] hard drive on his company-issued laptop computer,' and that '[the defendant's] conduct in misappropriating [the plaintiffs'] confidential and proprietary data has caused an economic loss to [the plaintiffs] in a one-year period that exceeds the $5,000 jurisdictional threshold requirement' under the CFAA," because the plaintiffs "offer[ed] no specific costs that would total an amount exceeding $5,000," they had failed to state a claim for relief under the CFAA.

In this case, Plaintiff merely asserts it will sustain more than $5,000 investigating Defendant's actions, but does not substantiate the assertion or define any cost for specific purposes. During oral argument, however, Plaintiff explained it has hired a computer expert to account for Defendant's actions and reiterated its position that it will incur at least $5,000 in damages as a result of Defendant's actions. Thus, the Court will order Plaintiff to amend its complaint to include more specific damage allegations. *See Sarter v. Mays*, 491 F.2d 675 (5th Cir. 1974); *Wilson v. Tangipahoa Pub. Sch. Bd.*, No. 13–271, 2013 WL 3733471 (E.D. La. July 15, 2013). As a result, the Court will deny Defendant's motion with respect to this claim on the condition that Plaintiff file an amended complaint addressing the issue within thirty days of this order.

V. **CONCLUSION**

Plaintiff has sufficiently alleged a plausible claim for relief under the DSTA. Having brought a federal claim for relief that is neither "wholly insubstantial" nor brought "solely for the purpose of obtaining jurisdiction," the Court finds it has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331. As a result, Defendant's 12(b)(1) motion to dismiss for lack of jurisdiction must be denied. Moreover, because the Court concludes an amended complaint could state a plausible claim for relief under the CFAA, the Court will allow Plaintiff to amend its complaint to address the deficiencies identified in this Order.

Accordingly;

**IT IS ORDERED** that Defendant Donald Rulh's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), R. Doc. 103, is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff Complete Logistical Services, LLC amend its complaint within thirty days of this Order to address the deficiencies identified in this Order with respect to its Computer Fraud and Abuse Act claim. In the event Plaintiff does not amend its complaint within thirty days, the Court will dismiss this claim with prejudice.

New Orleans, Louisiana on this 15th day of October, 2018.

_____
Eldon E. Fallon
United States District Judge