UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COMPLETE LOGISTICAL SERVICES, LLC**<br><br>**VERSUS**<br><br>**DONALD RULH, JR., et al.** | **CIVIL ACTION NO. 18-3799**<br><br>**JUDGE ELDON E. FALLON**<br><br>**MAGISTRATE JUDGE MICHAEL NORTH** |

**MEMORANDUM IN SUPPORT OF MOTION TO
LIMIT DEPOSITION AND FOR PROTECTIVE ORDER**

**MAY IT PLEASE THE COURT:**

**OVERVIEW**

A deposition is not an opportunity for opposing counsel to engage in a fishing expedition on whether the deponent has done any one of a litany of bad acts. *See, e.g.*, *Bythewood v. Unisource Worldwide, Inc.*, 413 F. Supp. 2d 1367, 1378 (N.D. Ga. 2006) ("Although plaintiff's counsel correctly asserts that she is allowed to ask difficult questions, she is not allowed to repeatedly ask questions that have no basis in the record." (citing FED. R. CIV. P. 30(b)(4)). Nor is it permissible to use a deposition for pure harassment. But that is exactly what counsel for the Non-Rulh Defendants[1] did during the recent deposition of Spencer Sens. On January 10, 2019, Mr. Sens' personal deposition began shortly before 6:00 p.m., after he had testified for approximately seven (7) hours as the corporate representative of Complete Logistical Services, LLC ("CLS") pursuant to a Rule 30(b)(6) notice. After approximately one hour of questioning, the parties agreed to terminate the deposition at 7:00 p.m. and reconvene same on February 15, 2019.

During the one hour of questioning that did take place, counsel for the Non-Rulh Defendants interrogated Mr. Sens regarding whether Mr. Sens had violated company policies

---
[1] The "Non-Rulh Defendants" are Arnold Baker, Morris Kahn, Michelle Elwell, and Shawana Harris. (Doc. 161).

1400887v.1

concerning having sex with employees,[2] whether his carrying of a gun pursuant to a valid permit violated company policy,[3] whether he had ever said that too many females in the office can make the office "catty,"[4] whether he ever discriminates against people on the basis of ethnicity or gender,[5] whether he had violated applicable laws concerning storing employee forms,[6] whether all of CLS's employees are properly insured,[7] whether he had been terminated from a previous employer,[8] and whether he ever instructed employees to forge signatures or falsify their numbers of hours worked to avoid an increase in insurance premiums.[9]  This questioning is wholly irrelevant to the issues in this case, which are only whether: (1) Defendants are liable for damages for misappropriating CLS's trade secrets and confidential information, (2) CLS owes Defendant Rulh unpaid salary and an accounting, and (3) Mr. Rulh was properly expelled as a member of CLS.

Moreover, the questioning was improper and a clear attempt to intimidate and harass Mr. Sens. "A deposition is not to be used as a device to intimidate a witness or opposing counsel so as to make that person fear the trial as an experience that will be equally unpleasant, thereby motivating him to either dismiss or settle the complaint." *See Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 160 F.R.D. 98, 99 (S.D. Ohio 1995). And if there was any doubt as to intent, that doubt was resolved three days after the deposition when Defendant Rulh sent Mr. Sens a series of text messages threatening to release audiotapes of allegedly incriminating telephone conversations to various third parties, and stating, among other things, "you fucked with the wrong person

---

[2] *See* Exhibit 1, January 10, 2019 Deposition of Spencer Sens [hereinafter Sens Depo.], at 13:19-14:2.
[3] *See id.* at 14:7-15:13.
[4] *See id.* at 49:2-16.
[5] *See id.*
[6] *See id.* at 46:2-47:10.
[7] *See id.* at 48:10-12.
[8] *See id.* at 17:22-18:19.
[9] *See id.* at 44:19-21, 50:3-10.

1400887v.1

BITCH."[10]

"Conduct that is not permissible in the courtroom during the questioning of a witness is ordinarily not permissible at a deposition." *See Ethicon Endo-Surgery*, 160 F.R.D. at 99. To prevent similar abuse by Defendants' counsel during the continuation of Mr. Sens' deposition, Mr. Sens asks that the Court grant this Motion and enter an Order, pursuant to Federal Rules of Civil Procedure 26 and 30, limiting the deposition of Mr. Sens to matters that are relevant to the claims at issue in this case and prohibiting questions regarding Mr. Sens' personal conduct.

## ARGUMENT

"At any time during a deposition, the deponent or a party may move to . . . limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or a party." *See* FED. R. CIV. P. 30(d)(3). Additionally, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." *See* FED. R. CIV. P. 26(c)(1). In this case, good cause exists for limiting the deposition of Mr. Sens both because (1) the inquiry into Mr. Sens' character and conduct is irrelevant and (2) the potential harm to Mr. Sens (and CLS) from Defendants' harassing questions outweighs any correlative potential benefit to Defendants.

    1. **The inquiry into Mr. Sens' personal life and conduct is irrelevant.**

Discovery is only permitted into relevant subject matter. *See* FED. R. CIV. P. 26(b)(1) (defining the scope of discovery to include "any nonprivileged matter that is relevant"). "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without

---

[10] *See* Exhibit 2.

the evidence." *See* FED. R. EVID. 401. Here, the questioning of Mr. Sens regarding alleged bad acts committed by Mr. Sens is plainly irrelevant.

As noted above, this case involves three issues: (1) whether Defendants are liable for damages for misappropriating CLS's trade secrets and confidential information, (2) whether CLS owes Mr. Rulh unpaid salary and an accounting, and (3) whether Mr. Rulh was properly expelled as a member of CLS.

With respect to the trade secret claims, Mr. Sens' conduct is obviously irrelevant. These claims turn on whether Defendants stole certain Confidential Information from CLS in March 2018. (*See, e.g.*, Doc. 98, ¶¶ 41-55). Mr. Sens' conduct is likewise irrelevant to the claims concerning whether CLS owes Mr. Rulh unpaid salary or an accounting.

As to Mr. Rulh's expulsion, counsel for Defendants have suggested that they believe the questioning is relevant to show that Mr. Rulh's conduct – which included the unauthorized withdrawal of $200,000+ from CLS' operating bank account (draining the account)[11] – was not sufficient to warrant expulsion by the members. Stated otherwise, Mr. Rulh may argue that to the extent Mr. Sens allegedly engaged in various bad acts, the members' collective decision to expel Mr. Rulh for causing direct harm to CLS was pretextual. This argument fails for two independent reasons.

First, Mr. Rulh has not asserted in his Answer (Doc. 153) or in his Counterclaim (Doc. 160) that he was expelled for pretextual reasons. Rather, Mr. Rulh's allegations are centered

---

11 The notice sent to Mr. Rulh recited several other examples of actions taken by Mr. Rulh that caused harm to CLS, but the members' decision to take action was precipitated directly by Mr. Rulh's misappropriation of company funds. The draining of CLS's bank account nearly caused CLS to miss payroll and actually caused CLS to delay promised bonus payments for several months and to rely more heavily on the factoring of account receivables, thereby significantly increasing CLS' capital costs and decreasing the company's profitability.

- 4 -

exclusively on his claim that CLS did not comply with expulsion procedures in the Operating Agreement, including the use of Postlewaite & Netterville to value his interest in CLS and the alleged refusal to consider Mr. Rulh's independent valuation. (*See* Doc. 160, ¶ 15; *see also id.*, ¶¶ 16-20). In other words, Mr. Rulh has not challenged the expulsion decision except to allege that the procedure detailed in the Operating Agreement was not followed. (*See id.*).

Second, even if Mr. Rulh had challenged CLS's stated reason for expelling him in his pleadings, any separate alleged misconduct by Mr. Sens would still be irrelevant. The Operating Agreement provides, in relevant part: "A member can . . . be expelled from the company for conduct causing direct harm to the company." (*See id.*, ¶ 62). Thus, the Operating Agreement is clear that expulsion is warranted if the "offending member's" conduct caused direct harm. (*See id.*). Conduct by other members in the past has no bearing on whether the members were justified in their determination that Rulh caused direct harm to CLS. *See, e.g.*, *K Street Developers, LLC v. Teachers Ins. & Annuity Ass'n of Am.*, 69 F. Supp. 3d 45, 57 (D.D.C. 2014) (granting summary judgment on breach-of-contract and bad-faith claims under Delaware law concerning the removal of an LLC manager because, in part, "[m]otive is irrelevant . . . in the absence of the essential elements of a breach of contract or of the covenant of good faith and fair dealing" and "[t]he two grounds for removal offered by [the defendant] [were] clearly contemplated by the terms of the agreement that both parties signed"). If the evidence demonstrates that Mr. Rulh did in fact cause direct harm to CLS, Mr. Rulh was properly expelled from the company by a vote of a majority of the members. It is irrelevant whether any other member could have been expelled at some time in the past.

Moreover, even if questions about Mr. Sens' character had some plausible relevance for *Mr. Rulh*, counsel for the Non-Rulh Defendants should not be permitted to continue asking

harassing questions.[12] The Non-Rulh Defendants have only been named as defendants to CLS's trade-secrets and confidential-information claims; they therefore have no interest in whether Defendant Rulh was properly expelled as a member of CLS. (*See* Doc. 161 (asserting affirmative defenses centered solely on the trade-secrets claims)). The objectionable line of questioning, however, came from counsel for the Non-Rulh Defendants. This alone demonstrates that the questions were designed only to harass and intimidate Mr. Sens. Regardless, there is no basis for the Non-Rulh Defendants to seek information concerning Mr. Sens' personal conduct. Accordingly, the Motion should at least be granted to prohibit counsel for the Non-Rulh Defendants from continuing with his objectionable line of questioning.

**2. Regardless, the potential harm to Mr. Sens and CLS outweighs any benefit to Defendants from obtaining the testimony; thus, the Protective Order should issue.**

Even if the harassing line of questioning by Defendants was somehow relevant, the Motion should still be granted because the harm to Mr. Sens and CLS outweighs any benefit to Defendants. Even where an area of inquiry is determined to be relevant, the Court must "compare the hardship to the party against whom discovery is sought against the probative value of the information to the other party. Courts also weigh relevant public interests in this analysis." *See Cazorla v. Koch Foods of Miss., LLC*, 838 F.3d 540, 555 (5th Cir. 2016) (internal quotations and citations omitted).

In *Smith v. Oppenheimer & Co.*, No. G83-948 CA, 1985 WL 5853 (W.D. Mich. Apr. 9, 1985), the Western District of Michigan refused to compel a response to an interrogatory seeking the names of customers to whom the defendant-brokers had sold the same securities that had been sold to the plaintiff. The plaintiff alleged that the names of the customers were relevant because the defendant-brokers allegedly "engaged in a concerted course of action to defraud him, and he

---

[12] It is also worth noting that, at the beginning of Mr. Sens' personal deposition, counsel for Defendant Rulh stated that he had no questions for Mr. Sens and passed the witness to counsel for the Non-Rulh Defendants.

- 6 -

s[ought] to prove this by showing defendants engaged in similar conduct with their other customers." *See id.* at *1. "Plaintiff also s[ought] to determine whether other customers of the defendants were placed in positions contrary to the plaintiff in order to impeach the [defendants'] expertise." *See id.* The court rejected the plaintiff's arguments, explaining that "[t]he obvious potential for detriment to the defendants in terms of their relationship with their customers outweigh[ed] the possibility that the discovery sought might [have] l[ed] to some evidence that defendants m[ight] have behaved similarly at another time." *See id.* Moreover, "[s]uch evidence would inculpate the defendants only by analogy and would require extensive proofs of merely collateral matters." *See id.* Accordingly, because the evidence was of limited relevance and because "for such evidence as plaintiff s[ought] to [have] be[en] of any probative value, there would likely have been enough resultant harm to have caused the dissatisfied customers in question to protest," the court denied the motion to compel and refused to require the defendant-brokers to turn over the customers' names. *See id.*

Even more than in *Smith*, the potential harm to Mr. Sens and CLS from Defendants' fishing expedition is obvious. *Cf. id.* ("The obvious potential for detriment to the defendants in terms of their relationships outweighs the possibility that the discovery sought might lead to some evidence that defendants may have behaved similarly at another time."). Defendants' counsel asked Mr. Sens a litany of irrelevant and harassing questions concerning his personal life and whether he committed various regulatory, statutory, and company-policy violations. These questions are potentially harmful both to Mr. Sens' personal reputation and to CLS's reputation with its customers. Accordingly, as in *Smith*, the immediate and potential harm to Mr. Sens and CLS from Defendants' line of questioning is apparent, and the Court should refuse to allow the discovery unless Defendants can show a compelling need for the information. *See, e.g., id.* (balancing the

potential harm to the defendant-brokers against the minimal probative value of the information sought); *see also, e.g.*, *Priest v. Rotary*, 98 F.R.D. 755, 761 (N.D. Cal. 1983) ("When a discovery request approaches the outer bounds of relevance and the information requested may only marginally enhance the objectives of providing information to the parties or narrowing the issues, the Court must then weigh that request with the hardship to the party from whom the discovery is sought." (internal quotations and citations omitted) (refusing to compel a sexual-harassment plaintiff to disclose the names of her sexual partners)).

Defendants cannot show any such compelling need. Defendants have suggested that the information is relevant to demonstrate that, because Mr. Sens allegedly engaged in misconduct in other situations, the stated reason for expelling Mr. Rulh is a pretext. But as in *Smith*, "[s]uch evidence . . . would require extensive proofs of merely collateral matters." *See* 1985 WL 5853, at *1. Indeed, as discussed above, any question of whether Mr. Sens engaged in misconduct is altogether irrelevant to whether Rulh caused direct harm to CLS, *see, e.g.*, *K Street Developers, LLC*, 69 F. Supp. 3d at 57, and would certainly require evidence on the collateral, irrelevant issue of whether any alleged harm by Mr. Sens was comparable to that caused by Defendant Rulh. Therefore, given the tenuous—and, as argued above, nonexistent—relevance of Mr. Sens' conduct to the issues in this case, Defendants' interest in questioning Mr. Sens about his personal life and conduct is far outweighed by the potential harm to Mr. Sens and CLS, and the Motion should be granted. *See, e.g.*, *id.*; *see also Boateng v. GEICO Gen. Ins. Co.*, Case No. 10-60147-CIV, 2010 WL 11552902, at *1-2 (refusing to compel production of complete personnel files in part because the production would implicate privacy concerns and because the court "need not condone the use of discovery to engage in fishing expeditions" (internal quotations and citations omitted); *Wheeles v. Human Res. Sys., Inc.*, 179 F.R.D. 635, 639 (S.D. Ala. 1998) ("[T]he court concludes that the

witnesses' interests in maintaining the privacy of their intimate relationships outweighs plaintiff's interest in invading it. Plaintiff essentially seeks to ask Starn and Waldrop whether they have ever engaged in sexual intercourse. She believes that evidence of a sexual relationship with Starn will discredit Waldrop's adverse testimony. . . . [T]he court finds this claim of bias rather weak, and the witnesses' interests in privacy rather strong. Therefore, the court holds that there is 'good cause' to limit the scope of the depositions of Starn and Waldrop in order to protect the deponents from annoyance, embarrassment, and oppression." (internal quotations and citation omitted)).[13]

## CONCLUSION

Defendants' questioning of Mr. Sens was a transparent attempt at harassment and intimidation. The questions were and remain irrelevant, and any potential benefit to Defendants of the testimony is far outweighed by the potential harm to Mr. Sens and CLS. Therefore, for the foregoing reasons, Mr. Sens asks that the Court grant this Motion for Protective Order and enter an Order, pursuant to Federal Rules of Civil Procedure 26 and 30, limiting the deposition of Mr. Sens to matters that are relevant to the claims at issue in this case and prohibiting questions regarding Mr. Sens' personal conduct. Mr. Sens requests any further relief deemed just and appropriate by the Court.

---

[13] To the extent any public interests are implicated by this Motion, *see Cazorla*, 838 F.3d at 555, those considerations favor granting the Motion because the public has an interest in protecting against unnecessary harassment and attempts by opposing counsel to intimidate parties, *see, e.g.*, *Centeno-Bernuy v. Becker Farms*, 219 F.R.D. 59, 61 (W.D.N.Y. 2003) (finding good cause to issue a protective order barring disclosure of FLSA plaintiffs' addresses, because the plaintiffs were migrant agricultural workers who had been threatened by their community and thus disclosure of their addresses might have had the effect of discouraging the plaintiffs from pursuing their claims).

1400887v.1

        Respectfully Submitted,

        */s/ Loretta G. Mince*
        Loretta G. Mince, 25796
        Michael R. Dodson, 37450
        **FISHMAN HAYGOOD, L.L.P.**
        201 St. Charles Ave., Suite 4600
        New Orleans, Louisiana 70170
        Telephone: (504) 586-5252
        Facsimile: (504) 586-5250

        *Attorneys for Spencer Sens*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2019 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

        *Loretta G. Mince*

1400887v.1