UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COMPLETE LOGISTICAL SERVICES, LLC, ) | Civil Action No.: 18-3799 |
| ) | |
| ) | Judge: Eldon E. Fallon |
| Plaintiff, ) | |
| ) | Magistrate Judge: Michael North |
| versus ) | |
| ) | |
| DONALD RULH, JR., ARNOLD BAKER, MORRIS KAHN, MICHELLE ELWELL, AND SHAWANA HARRIS ) ) ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH
THE DEPOSITION OF PLAINTIFF'S COUNSEL MARK FULLMER**

MAY IT PLEASE THE COURT:

Plaintiff Complete Logistical Services, LLC ("CLS"), through undersigned counsel, respectfully submits this Motion to Quash the Deposition of CLS' counsel Mark Fullmer. Defendant Donald Rulh, Jr. ("Defendant") served Mr. Fullmer and his law firm Phelps Dunbar LLP with a Notice of Deposition on April 17, 2019 ("Notice"), purportedly setting Mr. Fullmer's deposition for May 1, 2019.[1]  Deposing a party's counsel is greatly disfavored in Louisiana and can only be allowed under "extraordinary circumstances" and only after all procedural protections have been strictly followed. La. Code Civ. P. art. 1452; La. Code Evid. art. 508.  Defendant has failed to meet this high bar and, accordingly, Mr. Rulh's attempts to depose CLS' counsel Mr. Fullmer in this litigation should be quashed.

---

[1] A copy of Defendant's Notice of Deposition is attached as Exhibit 1.  Mr. Fullmer was also served with a subpoena to attend this deposition, which is attached as Exhibit 2. CLS moves to quash both the notice of deposition and the subpoena.

**I.     BACKGROUND**

There can be no dispute that Mr. Fullmer is CLS' past and current counsel.  Mr. Fullmer has served as counsel to CLS for years and regularly advises CLS regarding a host of commercial and business matters.  Mr. Fullmer is a partner of the Phelps Dunbar law firm, which is CLS' counsel of record in this case.

On Tuesday, April 16, 2019, Mr. Rulh, filed a motion for partial summary judgment.  That same afternoon, counsel for CLS emailed counsel for Mr. Rulh requesting an extension of the submission date on the motion, in part, because the original submission date would have required counsel for CLS to cancel previously-scheduled family obligations over Easter weekend to prepare the opposition.[2]  In response, Mr. Rulh's counsel sent an email objecting to the extension and simultaneously requesting the deposition of Mr. Fullmer.[3]

Later that same evening at 10:28 p.m., counsel for Shawana Harris, Mr. Morice, emailed CLS' counsel and stated that he intended to depose Mr. Fullmer and demanded that available deposition dates be provided by 5:00 pm on April 18, 2019.[4]  Mr. Morice indicated that he wanted to depose Mr. Fullmer because he "learned new information … regarding this case."[5]  Although he did not specify what supposed "new information" had been uncovered, previous communications indicate that Mr. Fullmer was sought to be deposed regarding a July 23, 2018 members' meeting of CLS, at which CLS' counsel, Mr. Fullmer, was present.[6]  Not only was Defendant present at and recorded the meeting in question, but his then-counsel of record in this

---

[2] *See* April 16-17, 2019 email chain, attached here as Exhibit 3.

[3] Exhibit 3.

[4] Exhibit 3.

[5] *Id.*

[6] *Id. See also* Exhibit 4, July 23, 2018 meeting minutes; *see also* Exhibit D to CLS' Motion for Summary Judgment (declaration of Spencer Sens authenticating same).

case also attended the meeting.[7]  This fact cannot be overlooked: **Defendant is seeking to depose CLS' attorney to ostensibly uncover information about a meeting that Defendant himself not only attended, with his counsel, but also recorded.**

On April 17, 2019 at 12:35 p.m., less than 24 hours after first requesting the deposition, Mr. Rulh unilaterally noticed Mr. Fullmer's deposition for May 1, 2019.[8]  The Notice does not state the scope of the proposed deposition or otherwise limit the topics of testimony in any way.[9]  It also does not provide a time limitation.[10]

The next day, on April 18, 2019, counsel for CLS sent an email to Defendant's counsel stating that CLS objects to the unilateral noticing of Mark Fullmer, who is current counsel for CLS, "without full compliance with Louisiana law regarding the depositions of attorneys."[11]  Later that day, Mr. Rulh's counsel replied that "[t]here was no unilateral notice as we asked for a date and time and you once again refused to respond."[12]  Of course, that is incorrect.  Counsel for Ms. Harris's late-night April 16, 2019 email explicitly stated that CLS had until 5:00 p.m. on April 18, 2019 to provide dates (itself an unreasonable request).  Yet, Defendant waited only until 12:35 p.m. the following day to unilaterally notice Mr. Fullmer's deposition.  This is just one of many examples of Defendant's bad faith approach to this issue.

CLS now moves to quash the deposition of its counsel, Mr. Fullmer.  As will be discussed below, Defendant has failed to meet the procedural requirements for deposing Mr. Fullmer.

---

[7] *Id*.

[8] Exhibit 1.

[9] *Id.*

[10] *Id.*

[11] *See* Exhibit 6 – April 18, 2019 email exchange between Arthur Kraatz and Geoffrey Ormsby.

[12] *Id.*

Defendant likewise cannot carry his heavy burden of demonstrating that he does not seek privileged information or that the "extraordinary circumstances" required for an attorney deposition are present. Finally, Defendant's long history of attempts to harass CLS and its counsel prevents him from credibly demonstrating that the deposition is for a non-harassing purpose. For these reasons, Defendant's unlawful attempt to depose Mr. Fullmer should be quashed.

## II. LAW AND ARGUMENT

### A. Louisiana's privilege law applies.

Federal Rule of Evidence article 501 provides that the availability and scope of a privilege is governed by the law of the state that "supplies the rule of decision." The Fifth Circuit has explained that, consistent with the choice-of-law rules generally applied by federal courts, courts apply the privilege law that would be applied by the forum state. *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 724 (5th Cir. 1980). Thus, with respect to the state-law claims in this case, the Court must apply the law of privilege that would be applied by a Louisiana court presiding over this dispute.[13]

### B. Defendant's deposition demand should be quashed because he cannot seek to obtain the requested information without a contradictory hearing.

Mr. Fullmer has acted as CLS' counsel at all times relevant to this lawsuit and continues to represent the company on business matters and to advise it regarding a host of issues, including

---

[13] To be clear, while a jurisdictional basis for this lawsuit is federal question jurisdiction, the only claim in this case to which Mr. Fullmer's deposition can plausibly relate is the pending dispute regarding Mr. Rulh's expulsion from CLS. State law provides the rule of decision for that claim and, accordingly, Rule 501 provides that Louisiana law governs the issues on this motion. Moreover, even if the Court were to apply federal law, Defendant still would be unable to meet his burden and depose Mr. Fullmer. Louisiana federal courts have held that, even under federal common law, opposing counsel may be deposed only in "limited circumstances — i.e., where the party seeking the deposition has shown that: (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Hall v. Louisiana*, No. 12-657-BAJ-RLB, 2014 U.S. Dist. LEXIS 56165, at *10 (M.D. La. Apr. 23, 2014) *citing Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir. 1986). Further, "the party asking to depose its opponent's counsel bears the burden of proof." *Id.*

- 4 -

- 5 -

issues related to the present litigation. Defendant now seeks Mr. Fullmer's testimony related to his representation of CLS without complying with the basic requirements of Louisiana law. Louisiana Code of Evidence article 508 provides: "Neither a subpoena nor a court order shall be issued to a lawyer or his representative to appear or testify in any civil or juvenile proceeding, including pretrial discovery, or in an administrative investigation or hearing, where the purpose of the subpoena or order is to ask the lawyer or his representative to reveal information about a client or former client obtained in the course of representing the client unless, after a contradictory hearing, it has been determined that the information sought is not protected from disclosure by any applicable privilege or work product rule…." This Court has repeatedly held that article 508 applies to subpoenas issued to Louisiana lawyers. *See e.g.*, *Frazier v. Runnels*, No. 18-2340, 2019 WL 398930, at *8 (E.D. La. Jan. 30, 2019); *Plotkin v. N. River Ins. Co.*, No. 12-1077, 2012 WL 2179103, at *12 (E.D. La. June 11, 2012); *Util. Constructors, Inc. v. Perez*, No. 15-4675, 2016 U.S. Dist. LEXIS 111206, at *7 (E.D. La. Aug. 22, 2016); *see also Keybank Nat'l Ass'n v. Perkins Rowe Assocs., LLC*, No. 09-497, 2010 WL 1252328, at *10 (M.D. La. Mar. 24, 2010).

Defendant's Notice falls squarely within the ambit of Louisiana Code of Evidence Article 508. The Notice, by its terms, requires CLS' counsel to appear at a specific time and place for the purpose of providing testimony about his representation of CLS. Because the Notice seeks to depose CLS' counsel without an order of this Court after a contradictory hearing, it is invalid on its face and should be quashed. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Cagle*, App. 3 Cir. 1994, 649 So.2d 642, 651, 1994-322 (La. App. 3 Cir. 11/2/94) (refusal to conducting contradictory hearing before ruling on request to depose attorneys was error); *McClanahan v. McClanahan*, App. 5 Cir. 2009, 27 So.3d 862, 866, 09-182, 09-426 (La. App. 5 Cir. 10/13/09) (subpoena duces tecum did not comply with Louisiana Code of Evidence Article 508 which

prohibited the issuance of a subpoena or a court order from being issued to a lawyer to appear or testify in any civil proceeding).

### C. Defendant's deposition subpoena should be quashed because it seeks privileged information.

Even if a contradictory hearing occurs, Defendant still bears the burden of proof to establish that the requested information is not protected from disclosure by any applicable privilege or work product rule—something he cannot do. *See* La. Code Evid. art. 508(A). Though the Notice provides no limitations on the topics of testimony, defense counsel's prior communications indicate that Defendant seeks information about a July 23, 2018 meeting between CLS and Defendant, at which CLS' counsel, Mr. Fullmer, was present.[14] Given that Defendant and his litigation counsel were also present at the meeting and Defendant recorded it, the only non-duplicative information Defendant could feasibly be seeking is the impressions of Mr. Fullmer and his client CLS and related planning, analysis, communications, and discussions between them, all of which is subject to attorney-client and/or work product privilege. Defendant's only purpose for deposing Mr. Fullmer (outside of harassment, which will be discussed below), would be to obtain privileged information. Even if Mr. Fullmer was willing to testify regarding privileged matters, he cannot. Attorney-client privilege belongs to the client, not its attorney. *See* La. Code Evid. art. 508(B) ("A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client…"). Accordingly, Defendant's deposition demand should be quashed.

---

[14] Exhibit 4.

### D. Defendant's deposition demand should be quashed because Defendant cannot meet its burden of proof, even if it seeks non-privileged information.

Under La. Code Civ Pro. art. 1452, no attorney shall be deposed except "under extraordinary circumstances." As the Louisiana Supreme Court has noted, '[t]he practice of deposing attorneys of record is greatly disfavored in Louisiana. Other jurisdictions share this aversion, as this practice is believed to result in unnecessary delays, potential harassment, and, in the extreme case, to the disqualification of the attorney." *Board of Com'rs of New Orleans Exhibition Authority v. Missouri Pacific R. Co.*, 647 So.2d 340, 340-41 (La. 12/19/94). "The deposition of opposing attorneys can also disrupt the adversarial process, lower the standards of the profession, and create a chilling effect between attorney and client." *Id*. at 341.

> "In order to demonstrate extraordinary circumstances under this article, the movant must first show that no other practicable means are available to obtain the desired information. Accordingly, if there are other persons available who possess the information, they must be deposed first. If not, then other discovery devices, such as written interrogatories, should be employed before allowing deposition of opposing counsel. The movant must then show that the desired information is relevant, and that the need for it substantially outweighs the harms that the deposition may cause." *Id*.

"Discovery of information held by attorneys and related to their practice must be conducted with the recognition that such material is available only under exceptional circumstances and only where the information sought cannot be obtained through other means." *Levy v. Maloney*, 652 So.2d 522, 522 (La. 3/24/95) (limiting discovery of attorney records even where attorney is a personal injury plaintiff seeking damages for loss of income).

Stated another way, Defendant must satisfy the criteria of Code of Evidence Article 508 before undertaking the extraordinary tactic of seeking Mr. Fullmer's deposition. By law, even if the requested information is not protected from disclosure by any applicable privilege or work product rule (which it is), Defendant still must prove all of the following:

1. The information sought is essential to the successful completion of an ongoing investigation, is essential to the case of the party seeking the information, and is not merely peripheral, cumulative, or speculative.

2. The purpose of seeking the information is not to harass the attorney or his client.

3. With respect to a subpoena, the subpoena lists the information sought with particularity, is reasonably limited as to subject matter and period of time, and gives timely notice.

4. There is no practicable alternative means of obtaining the information.

La. Code Evid. art. 508(A).

Defendant cannot satisfy these requirements. The Code makes it clear that seeking discovery from a litigant's attorney is a last resort that only rarely should be allowed, and only after all other means have been exhausted. Defendant simply cannot show why the information sought from Mr. Fullmer is essential or why there is no practicable alternative means of obtaining the information. Indeed, Defendant attended the meeting in question and recorded it. He is already in possession of every discoverable fact there is about the meeting. At most, the non-privileged information sought is cumulative. Moreover, if Defendant genuinely desired additional non-privileged information about the meeting, he could have submitted discovery requests such as interrogatories prior to the expiration of the discovery deadline or taken the deposition of other non-lawyer individuals who attended the meeting. That he has chosen not to do so illuminates the true purpose of his deposition request: to harass CLS and its attorneys.

The information sought from Mr. Fullmer is also not essential because Defendant has stipulated that his expulsion from CLS is no longer an issue in the case and the only issue is how much he is owed for his expulsion. Specifically, at the recent deposition of Mr. Rulh, counsel for Mr. Rulh stipulated that Mr. Rulh was not challenging the validity of his expulsion or the procedure that culminated in his expulsion, but is only challenging whether Mr. Rulh's expulsion price is

correct and was determined in accordance with the Operating Agreement.[15] In light of that stipulation, the need for Mr. Fullmer's deposition is even more remote. Because Mr. Rulh is not challenging the expulsion process itself, only the propriety of the expulsion price, it is wholly unclear what he could possibly hope to obtain from Mr. Fullmer. Instead, it is far more likely that the purpose of the deposition is to harass CLS.

The evidence demonstrating that Mr. Rulh is engaged in a sustained campaign of harassment against CLS and its attorneys is overwhelming. First, the email correspondence requesting the deposition of Mr. Fullmer is, itself, evidence of harassment. The tone of those e-mails strains the bounds of professional conduct and, unfortunately, is part of a disturbing pattern in this case. Second, Ms. Harris' request for the deposition of Mr. Fullmer strains credulity given that no claims have ever been pending against her related to Mr. Rulh's expulsion from CLS (the sole issue on which Mr. Fullmer's deposition could even arguably be relevant). Rather, the request for Mr. Fullmer's deposition is more consistent with Defendants' conduct in this case. Conduct that resulted in the Court granting a protective order in favor of Spencer Sens, the CEO of CLS, to stop Defendant's harassment of him.[16] *See* Rec. Doc. 203.

Moreover, this is not the first time that Mr. Rulh has attempted to harass CLS' counsel specifically. For example, during Mr. Rulh's expulsion process, Mr. Rulh sent an email to Mr. Fullmer in which Mr. Rulh levied a series of unfounded accusations against Mr. Fullmer and specifically threatened that "As You have been Corporate Attorney for CLS for many years, I request that you answer some of these questions voluntarily or they can be answered in the Court

---

[15] *See* Exhibit 5, Deposition transcript of Donald Rulh, pp. 83:25-92:22 (stipulations of the parties).

[16] Mr. Rulh's efforts to harass CLS, its employees, and Mr. Sens in particular are well documented. *See* Rec. Doc. 171 (Mr. Sens' Motion for Protective Order); Rec. Doc. 180 (CLS' Response to Motion for Protective Order).

Room and/or the Louisiana Bar Association."[17] In other words, Mr. Rulh has previously threatened to compel Mr. Fullmer's testimony—a threat that has now been realized.[18] Additionally, on April 2, 2018, Mr. Patron's (litigation counsel for CLS) legal assistant forward correspondence to several individuals, including Mr. Rulh, requesting that they preserve evidence relevant to this litigation. Mr. Rulh responded to Mr. Patron's assistant with a harassing e-mail that lobbed a host of inaccurate accusations regarding CLS.[19]

### E. Defendant's Deposition Notice should be Quashed as Untimely.

Finally, Mr. Rulh's deposition request should be denied as untimely. Article 508 requires that Mr. Rulh obtain an order from this Court, following a contradictory hearing, before he can depose CLS' counsel. Yet, Mr. Rulh did not seek such a hearing within the Court's discovery deadlines. Because he failed to request the required hearing in time to permit the Court to rule on this issue before the expiration of discovery, the Court should deny his deposition request on that additional basis.

### III. CONCLUSION

Accordingly, CLS requests that this Court, consistent with settled privilege law of Louisiana, protect CLS' attorney Mr. Fullmer from Defendant's impermissible Notice of Deposition and grant CLS' Motion to Quash, for the reasons articulated herein.

---

[17] Exhibit 7, February 23, 2018 email from Mr. Rulh to Mr. Fullmer.

[18] Mr. Rulh also alleged in the email that Phelps Dunbar is his "previous counsel." For the record, while Phelps Dunbar has represented companies in which Mr. Rulh held a membership interest, Phelps Dunbar has never represented Mr. Rulh in any capacity.

[19] CLS is not filing this email into the record because of the host of scandalous, false, and irrelevant accusations made by Mr. Rulh in the email. CLS, however, stands willing to provide a copy of the e-mail for the Court's review.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:   */s/ David L. Patrón*
David L. Patrón (Bar #22566)
Ashley J. Heilprin (Bar #34928)
Arthur R. Kraatz (Bar #35194)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Facsimile: 504-568-9130
Email: patrond@phelps.com
Email: ashley.heilprin@phelps.com
Email: arthur.kraatz@phelps.com

**ATTORNEYS FOR PLAINTIFF COMPLETE LOGISTICAL SERVICES, LLC**