In the Matter of:

*Complete Logistical Services LLC*

*vs.*

*Donald Rulh Jr., Arnold Baker, et al*

_____

# Donald F. Rulh, Jr.

April 24, 2019

_____



**504-833-3330**
www.currenland.com

**EXHIBIT B**

Donald F. Rulh, Jr.
4/24/2019

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


COMPLETE                        ACTION NO.: 18-3799
LOGISTICAL SERVICES,
                                JUDGE:  ELDON E. FALLON
VERSUS
                                MAGISTRATE JUDGE:
DONALD RULH, JR.,       MICHAEL NORTH
ARNOLD BAKER, MORRIS
KAHN, MICHELLE ELWELL,
AND SHAWANA HARRIS
* * * * * * * * * * * * * * * * * * * * * * * *


        Deposition of DONALD F. RULH, JR., 301
Fairway Drive, New Orleans, Louisiana 70124,
taken at the law offices of SMITH & FAWER, LLC,
located at 201 St. Charles Avenue, Suite 3702,
New Orleans, Louisiana 70170, commencing at
9:21 A.M., on Wednesday, the 24th day of April,
2019.


APPEARANCES:

    PHELPS DUNBAR, LLP
    (By:  David L. Patrón, Esquire
            - and -
        Arthur R. Kraatz, Esquire)
    365 Canal Street
    Suite 2000
    New Orleans, Louisiana  70130-6534

    SMITH & FAWER, LLC
    (By:  J. Geoffrey Ormsby, Esquire)
    201 St. Charles Avenue
    Suite 3702
    New Orleans, Louisiana  70170

Donald F. Rulh, Jr.
4/24/2019

```
 1   APPEARANCES (continued):

 2

 3       MORICE LAW FIRM
         (By:  Mark Morice, Esquire)
 4       1132 Derbigny Street
         Gretna, Louisiana 70053
 5

 6

     ALSO PRESENT:

 7

 8       Spencer Sens

 9

10

     REPORTED BY:

11

12       KATHY ELLSWORTH SHAW, CCR, RPR
         Certified Court Reporter
13       (No. 049519)
         Curren Court Reporters
14       749 Aurora Avenue
         Suite 4
15       Metairie, Louisiana  70005
         (504) 833-3330 (800) 487-3376
16

17

18

19

20

21

22

23

24

25
```

Donald F. Rulh, Jr.
4/24/2019

1              E X A M I N A T I O N   I N D E X
2
3                                              PAGE
4
5      EXAMINATION BY MR. PATRÓN....................5
                RE-EXAMINATION...................262
6
7      EXAMINATION BY MR. ORMSBY.................202
8
9              E X H I B I T   I N D E X
10
       EXHIBIT NO. 1...............................51
11
       EXHIBIT NO. 2...............................53
12
       EXHIBIT NO. 3...............................93
13
       EXHIBIT NO. 4...............................
14
       EXHIBIT NO. 5..............................127
15
       EXHIBIT NO. 6..............................137
16
       EXHIBIT NO. 7..............................140
17
       EXHIBIT NO. 8..............................142
18
       EXHIBIT NO. 9..............................173
19
       EXHIBIT NO. 10.............................185
20
       EXHIBIT NO. 11.............................187
21
       EXHIBIT NO. 12.............................195
22
       EXHIBIT NO. 13.............................204
23
       EXHIBIT NO. 14.............................228
24
                  *      *      *      *      *
25

Donald F. Rulh, Jr.
4/24/2019

Page 4

```
 1              S T I P U L A T I O N

 2          It is stipulated and agreed by

 3     and among counsel for the parties hereto that

 4     the deposition of the aforementioned witness is

 5     hereby being taken under the Federal Rules of

 6     Civil Procedure, for all purposes, in

 7     accordance with law;

 8          That the formalities of reading and

 9     signing are specifically waived.

10          That the formalities of filing, sealing,

11     and certification are specifically waived;

12          That all objections, save those

13     as to the form of the question and the

14     responsiveness of the answer, are hereby

15     reserved until such time as this

16     deposition, or any part thereof, may be

17     used or sought to be used in evidence.

18          *     *     *     *     *

19          KATHY ELLSWORTH SHAW, Certified

20     Court Reporter, State of Louisiana,

21     officiated in administering the oath to

22     the witness.

23

24

25
```

Donald F. Rulh, Jr.
4/24/2019

```
 1   in the minutes?
 2         A.   No.
 3         Q.   Okay.  Do you recall -- Do you
 4   recall any other motions to amend the operating
 5   agreement other than what is reflected in the
 6   minutes of the April 23rd, 2014, meeting?
 7         A.   Other than this?
 8         Q.   Yes.
 9         A.   No.
10         Q.   Okay.  And you said previously that
11   this was the only company meeting that you ever
12   participated in; right?
13         A.   Yes, sir.
14         Q.   Okay.  So is it safe to assume that
15   the only amendments that ever would have
16   occurred to the operating agreement would be
17   the ones that are reflected in these minutes?
18         A.   Would have come from here, yeah.
19         Q.   Yes, okay.
20              So combined, do you agree that
21   Exhibit 1 and Exhibit 2 are the operating
22   agreement of the company?
23         MR. ORMSBY:
24              So stipulated.
25         THE WITNESS:
```

Donald F. Rulh, Jr.
4/24/2019

```
 1                  I would say --
 2          MR. ORMSBY:
 3                  I'm going to stipulate it, that it's
 4           the operating agreement of the company.
 5          MR. PATRÓN:
 6                  Okay.
 7      EXAMINATION BY MR. PATRÓN:
 8          Q.    You agree with that?
 9          A.    Yes.
10          Q.    Okay.  All right.
11          A.    Although I could not remember all
12      details of everything that was talked about.
13          Q.    Okay.  All right.  Fine.
14          A.    Just being honest.
15          MR. ORMSBY:
16                  I got to deal with them.  It's bad
17           enough I got to deal with them.
18          MR. PATRÓN:
19                  All right.
20          THE WITNESS:
21                  I'm sorry.
22      EXAMINATION BY MR. PATRÓN:
23          Q.    All right.  Let's switch gears and
24      go to December 2017.
25                  Now, do you admit that you withdrew
```

1    **$222,000 out of the CLS bank account?**

2           A.    Yes, I did.

3           **Q.    Okay.  Can you describe how you did**

4    **that?**

5           A.    The physical?

6           **Q.    Yeah.  What happened that day?  How**

7    **did you go about withdrawing that money?**

8           A.    I was told by my counsel that, after

9    them looking into certain things, which I -- I

10   won't into detail of it, but they said that,

11   "It's your right.  It's part of your money

12   that's owed to you and you have the right to

13   take, you know, some of that money and what

14   we're seeing right now, you should look out for

15   your money."

16          **Q.    Who told you that?**

17          A.    Michael Carbo.

18                 And that's what happened.  I was

19   roughly owed in back salary, you know, seven,

20   $800,000, I think.  Somewhere's around there.

21          **Q.    Okay.  Did you talk to any of the**

22   **member of CLS about withdrawing the money from**

23   **the CLS bank account before you did it?**

24          A.    I talked to Spencer about a month or

25   two before that and a lot of different times,

**Donald F. Rulh, Jr.**
**4/24/2019**

```
 1   either e-mails or calls, "Hey, we're going to
 2   get you paid back on quarterly bonuses and
 3   salaries, whatnot."  Trey Morice, that week I
 4   had gone to Thibodaux and I -- and we had a
 5   conversation.  And he --
 6        Q.   My question was really specific.  It
 7   was not about discussions you had about what
 8   you were owed for back pay.  I know you had
 9   discussions about that, but -- So listen to my
10   question here.
11             Did you ever have any discussions
12   with any members of the CLS about withdrawing
13   money --
14        A.   No, sir.
15        Q.   Let me finish the question.
16             -- about withdrawing money from the
17   CLS bank account before you did it?
18        A.   No, sir.
19        MR. ORMSBY:
20              Can I talk to you for a second about
21           something?
22        MR. PATRÓN:
23              Let's go off the record.
24              (Whereupon a recess was taken.)
25        Mr. PATRÓN:
```

**Donald F. Rulh, Jr.**
**4/24/2019**

```
 1              We're back on the record.
 2               The parties to the case have
 3          conferred in an effort to streamline and
 4          simplify this case and get some type of
 5          stipulations as to what is in dispute and
 6          not in dispute.  The parties have
 7          conferred and we believe have come to an
 8          agreement and my understanding, and I
 9          want Mr. Ormsby to put it on the record,
10          and I would like Mr. Rulh to also make a
11          statement as to his agreement to this,
12          but my understanding is that there is no
13          issue or dispute as to whether or not
14          Mr. Rulh has been expelled from the
15          company and that Mr. Rulh does not intend
16          to challenge the fact that he is no
17          longer a member and will not be
18          reinstated and that the issue is the
19          compensation that he was paid as a result
20          of his being expelled.  And that whereas
21          Mr. Rulh will reserve all arguments and
22          rights to take issue with the payment CLS
23          decided to make with regard to his
24          expulsion, he is -- he is stipulating to
25          the fact that he was expelled from the
```

**Donald F. Rulh, Jr.**
**4/24/2019**

```
 1          company.
 2               And I'd like Geoff to confirm that.
 3          MR. ORMSBY:
 4               Yeah.  We confirm that the -- and
 5          I'm going to look at the amended
 6          counterclaim and, David, if we would
 7          like, we could -- I could file a motion
 8          for unopposed motion for leave.  I'll
 9          send it by you first as well.
10               Just to make sure we're on the same
11          page, I'll strike the allegation, but
12          the -- Any allegation as proposed in
13          Paragraph 15 of the amended counterclaim
14          that CLS failed to properly follow the
15          operating agreement expelling Mr. Rulh
16          and/or arriving at the expulsion price,
17          we reserve all rights to challenge the
18          latter part of that that says "at
19          arriving at the expulsion price."
20           regarding -- as David said, we are not
21          challenging -- we are not challenging
22          expulsion of Mr. Rulh, only challenging
23          how the, quote/unquote, expulsion price
24          and/or redemption price or however
25          they're going to -- it's called, was
```

**Donald F. Rulh, Jr.**
**4/24/2019**

1    arrived at in expelling Mr. Rulh.  Thus,

2    we would then, therefore, strike out of

3    our amended counterclaim, David, Count 2,

4    which is the violation of the Louisiana

5    Unfair Trade Practices and Consumer

6    Protection Law and specifically

7    Paragraphs 25, 26, 27, 28, and 29

8    therein.

9        Additionally, it's misstated as

10   breach -- Count 2, breach of contract, I

11   think that's -- I believe it's Count 3,

12   but notwithstanding the breach of

13   contract claim, we will reserve our

14   rights -- we will dismiss that claim

15   because I believe that claim is actually

16   going to probably be litigated in the CDC

17   suit.  So we'll -- we will dismiss that

18   claim.  That's Paragraphs 30, 31, 32, 33,

19   and 34 of the amended counterclaim.

20       Count 8, which is the accounting, 35

21   and 36 paragraphs therein, we would

22   therefore agree to remove from our

23   counterclaim.

24       Count 9, the declaratory judgment

25   action, we believe would still be

**Donald F. Rulh, Jr.**
**4/24/2019**

Page 87

```
 1          appropriate for adjudication except for
 2          Paragraph 40, David, which is the members
 3          of CLS failed to comply with the
 4          expulsion provisions of the operating
 5          agreement in purportedly expelling
 6          Mr. Rulh.  That will not be an issue at
 7          trial.
 8      MR. PATRÓN:
 9          And also 42?
10      MR. ORMSBY:
11          And also -- Exactly.  I was going
12          down.  Forty-two, that Mr. Rulh is
13          entitled to a judgment declaring
14          expulsion process was invalid.  We do not
15          dispute that Mr. Rulh, nor will we
16          contest that Mr. Rulh has been expelled
17          from CLS.  We do reserve all rights
18          regarding the valuation and/or expulsion
19          price set by CLS and its members as
20          stated in Articles 43 and Article 44 as
21          well as Article 41 of -- and, I'm
22          sorry -- 38 as well and 37 in Count 9 of
23          the declaratory judgment action.
24      MR. PATRÓN:
25          Anything else, Geoff?
```

**Donald F. Rulh, Jr.**
**4/24/2019**

Page 88

```
 1          MR. ORMSBY:
 2              No.
 3          MR. PATRÓN:
 4              Okay.
 5          MR. ORMSBY:
 6              Unless you think of anything else
 7         you want to put in there.
 8          MR. MORICE:
 9              The only other thing I remember
10         hearing is that CLS is not claiming that
11         Mr. Rulh agreed to the P&L valuation at
12         the time of expulsion, which I believe
13         that Mr. Patrón said.
14          MR. PATRÓN:
15              Yes.  I can put that on the record.
16          MR. ORMSBY:
17              Go ahead, David, if you want to do
18         it here.
19          MR. PATRÓN:
20              I'm happy to do that now.
21              CLS is not maintaining and we'll
22         stipulate that it is not taking the
23         position that Mr. Rulh agreed to the
24         accounting firm Postlethwaite and
25         Netterville to evaluate his expulsion
```

**Donald F. Rulh, Jr.**
**4/24/2019**

Page 89

```
 1              price.  We reserve the right to argue
 2              that there was a different circumstance
 3              wherein he agreed to that accounting firm
 4              for a different purpose, but we are not
 5              maintaining that he agreed to --
 6         MR. ORMSBY:
 7              And we'll stipulate to that.  We'll
 8          stipulate.
 9         MR. PATRÓN:
10              -- Postlethwaite & Netterville for
11          the purposes of his expulsion price from
12          the company.
13         MR. ORMSBY:
14              And that's the only -- From
15          Mr. Rulh's perspective as to his
16          counterclaim, the only issues for trial
17          will be whether or not the expulsion
18          price as provided for in the operating
19          agreement, notwithstanding what
20          paragraph, whether it was properly
21          arrived at and whether -- in determining
22          that expulsion process, whether the
23          operating agreement was complied with,
24          not the expulsion itself.
25    EXAMINATION BY MR. PATRÓN:
```

**Donald F. Rulh, Jr.**
**4/24/2019**

```
 1        Q.   Now, Mr. Rulh, you have heard the
 2   stipulations as summarized by me and your
 3   counsel.  And I'm going to ask you, have you
 4   had an opportunity to discuss that with -- with
 5   your lawyer?
 6        MR. ORMSBY:
 7             And were you done?
 8             Did -- Did -- Would -- Did you do so
 9          without any pressure from counsel to have
10          you agree to that stipulation?
11             This comes from the divorce world.
12        THE WITNESS:
13             No pressure.  We did discuss some
14          things, but can we -- Since we went
15          through that, can I talk to you about
16          exactly what it -- I have a couple --
17          just a couple of questions that I'd maybe
18          like to ask?
19        MR. PATRÓN:
20             Can I just finish before you do
21          that --
22        THE WITNESS:
23             Okay.
24        MR. PATRÓN:
25             -- because we just went through and
```

**Donald F. Rulh, Jr.**
**4/24/2019**

```
 1          put this on the record?
 2     EXAMINATION BY MR. PATRÓN:
 3          Q.   Do you -- Do you agree with those
 4     stipulations?
 5          A.   Yes.
 6          Q.   Okay.  And did you have an
 7     opportunity to discuss these with your counsel
 8     before they were made and no pressure was made
 9     upon you to -- to accept these stipulations?
10          A.   Yes.
11          MR. PATRÓN:
12               Do you want to take a break now?
13          MR. ORMSBY:
14               Yeah.
15          THE WITNESS:
16               Yeah.
17               (Whereupon a recess was taken.)
18          MR. PATRÓN:
19               Back on the record.
20     EXAMINATION BY MR. PATRÓN:
21          Q.   Mr. Rulh, you just had another
22     second occasion to confer with your counsel,
23     Mr. Ormsby, about the stipulations that were
24     put on the record by both me and him pertaining
25     to this case.  Are you still in agreement that
```

**Donald F. Rulh, Jr.**
**4/24/2019**

Page 92

```
 1    you agree with the stipulations that were made?
 2         A.   Yes, sir.
 3         Q.   And you understand that those
 4    stipulations are going to control the trial of
 5    this case?
 6         A.   Yes, sir.
 7         Q.   And you weren't pressured into that
 8    in any way?
 9         A.   No, sir.
10    MR. ORMSBY:
11              And as we talked, I will -- If you
12         guys will agree not to oppose me in
13         court, I will revise the amended
14         counterclaim consistent with our
15         stipulations and also obviously send it
16         by you, as anyone would, with a request
17         for leave and we can work to make sure
18         we're on the same page.
19    MR. KRAATZ:
20              Yes.
21    MR. PATRÓN:
22              All right.  Let's go off the record.
23              (Whereupon the lunch recess
24         commenced at 11:50 A.M., and the
25         proceedings reconvened at 12:43 P.M.)
```

**Donald F. Rulh, Jr.**
**4/24/2019**

Page 104

```
 1  time period that I had been promised to be
 2  paid.
 3       Q.   Yeah.  Okay.  Maybe my question
 4  wasn't clear, but I was asking you how did you
 5  come up with the number of 222,000 to take out
 6  if there was more money in the bank account?
 7       A.   There was not that much.
 8       Q.   Okay.
 9       A.   And I've said that.
10       Q.   Okay.  So you -- Okay.
11            If there had --
12       A.   On that day.
13       Q.   If there had been more, would you
14  have taken it out?
15       A.   If there had been more, I would have
16  taken more out.
17       Q.   Okay.  Do you know what happened to
18  CLS in terms of its cash flow as a result of
19  your taking the money out in December 2018?
20       A.   They cut off communications with me.
21       Q.   So is -- is your answer you do not
22  know what happened?
23       A.   I don't know specifically.
24       Q.   Do you know generally?
25       A.   I would take a guess on what I --
```

Donald F. Rulh, Jr.
4/24/2019

Page 156

```
 1              The thing is, I -- I pulled the --
 2         MR. ORMSBY:
 3              Answer his question yes or not.  Did
 4          you pull it?
 5         THE WITNESS:
 6              It was -- It -- It was potentially
 7          for another company once I'd known that I
 8          was being frozen out and I had to go do
 9          my own thing potentially.
10    EXAMINATION BY MR. PATRÓN:
11         Q.   And didn't soon after you obtained
12    that information of CLS's client list and
13    profit-and-loss statements, you sent that to at
14    least three people?  Right?
15         A.   I think one was -- one e-mail maybe
16    to Arnold and Morris together.  I was, you
17    know, knowing that I was going to --
18         Q.   Arnold Baker and Morris Kahn?
19         A.   Yes.
20         Q.   Okay.
21         A.   Knowing that if I do do another
22    business, if I'm really being forced to have to
23    go and feed my family, that I'm going to need
24    to be able to, you know, get financing for
25    payroll and payroll is based off of, you know,
```

Donald F. Rulh, Jr.
4/24/2019

Page 280

```
 1              REPORTER'S CERTIFICATE
 2         This certification is valid only for a
    transcript accompanied by my original signature
 3  and original required seal on this page.
           I, Kathy Ellsworth Shaw, Certified Court
 4  Reporter in and for the State of Louisiana, as
    the officer before whom this testimony was
 5  taken, do hereby certify that DONALD F. RULH,
    JR., to whom oath was administered, after
 6  having been duly sworn by me upon authority of
    R.S. 37:2554, did testify as hereinabove set
 7  forth in the foregoing 279 pages; that this
    testimony was reported by me in stenotype
 8  reporting method, was prepared and transcribed
    by me or under my personal direction and
 9  supervision, and is a true and correct
    transcript to the best of my ability and
10  understanding; that the transcript has been
    prepared in compliance with transcript format
11  guidelines required by statute or by rules of
    the board, and that I am informed about the
12  complete arrangement, financial or otherwise,
    with the person or entity making arrangements
13  for deposition services; that I have acted in
    compliance with the prohibition on contractual
14  relationships, as defined by Louisiana Code of
    Civil Procedure Article 1434 and in rules and
15  advisory opinions of the board; that I have no
    actual knowledge of any prohibited employment
16  or contractual relationship, direct or
    indirect, between a court reporting firm and
17  any party litigant in this matter nor is there
    any such relationship between myself and a
18  party litigant in this matter nor is there any
    such relationship between myself and a party
19  litigant in this matter; I am not related to
    counsel or to the parties herein, nor am I
20  otherwise interested in the outcome of this
    matter.
21
          _____
22        KATHY ELLSWORTH SHAW, CCR, RPR
          Certified Court Reporter
23        Curren Court Reporters
          749 Aurora Avenue
24        Suite 4
          Metairie, Louisiana  70005
25
```