JASON MACMORRAN, CPA, ABV, CFF, CVA on 05/10/2019

```
 1                UNITED STATES DISTRICT COURT

 2                EASTERN DISTRICT OF LOUISIANA

 3

 4

 5   COMPLETE LOGISTICAL SERVICES, *  CIVIL ACTION
     LLC                          *  NO.:  18-3799
 6                                *
     VERSUS                       *  JUDGE:  ELDON E.
 7                                *  FALLON
                                  *
 8   DONALD RULH, JR., ET AL      *  MAGISTRATE JUDGE:
                                  *  MICHAEL NORTH
 9   *  *  *  *  *  *  *  *  *  *  *

10

11        Deposition of JASON MACMORRAN, CPA, ABV, CFF,

12   CVA, taken at the offices of Phelps Dunbar, LLP,

13   located at 365 Canal Street, Suite 2000, New

14   Orleans, Louisiana  70130, on Friday, the 10th day

15   of May, 2019 at 1:17 p.m.

16

17

18

19

20

21   REPORTED BY:

22        QUINCEE B. ROCCAFORTE, CCR, RPR
          CERTIFIED COURT REPORTER
23

24

25
```

**EXHIBIT B**

```
 1  APPEARANCES:

 2        PHELPS DUNBAR, LLC
          (BY:  DAVID PATRÓN, ESQUIRE)
 3        365 Canal Street
          Suite 2000
 4        New Orleans, Louisiana  70130
          504-566-1311
 5        david.patron@phelps.com
          (Counsel for the Plaintiff,
 6        Complete Logistical Services, LLC)

 7

 8        SMITH & FAWER, LLC
          (BY:  J. GEOFFREY ORMSBY, ESQUIRE)
 9        201 St. Charles Avenue
          Suite 3702
10        New Orleans, Louisiana  70170
          504-525-2200
11        gormsby@smithfawer.com
          (Counsel for the Defendant,
12        Donald Rulh, Jr.)

13

14  ALSO PRESENT:

15        DONALD RULH, JR.
          ATHEN SWEET
16

17

18

19

20

21

22

23

24

25
```

JASON MACMORRAN, CPA, ABV, CFF, CVA on 05/10/2019

3

```
 1
 2                        INDEX
 3
 4  EXAMINATION BY:
 5  MR. ORMSBY...................................   5
 6
 7                  *   *   *   *   *
 8                      EXHIBITS
 9
10  Exhibit No. 1 - Initial Report (6/5/2018).....  7
11  Exhibit No. 2 - Rebuttal Report............... 16
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

4

```
1
2                    S T I P U L A T I O N
3
4         It is stipulated and agreed by and between
5    counsel for the parties hereto that the deposition
6    of the aforementioned witness is hereby being taken
7    under the Federal Code of Civil Procedure, for all
8    purposes, in accordance with law;
9         That the formalities of reading and signing
10   are specifically waived;
11        That the formalities of sealing,
12   certification, and filing are specifically waived;
13        That all objections, save those as to the
14   form of the question and the responsiveness of the
15   answer, are hereby reserved until such time as this
16   deposition, or any part thereof, may be used or
17   sought to be used in evidence.
18
19        QUINCEE B. ROCCAFORTE, Certified Court
20   Reporter in and for the State of Louisiana,
21   officiated in administering the oath to the
22   witness.
23
24
25
```

1        Q.     Why did you believe that was          02:18

2   appropriate?

3        A.     Again, a company specific risk premium

4   is a standard adjustment in a cost of equity

5   estimate.  It is discussed at length in every

6   valuation textbook I have ever seen, including the

7   source materials Mr. Sweet and I both relied on.

8   And in my judgment, it was both necessary and

9   appropriate circumstances.

10        Q.     Yeah, but you agree with me there's no

11   guidelines in how to estimate a risk premium CSRP,

12   correct?

13        A.     I will agree that of the cost of

14   capital elements, it is subjective, but there is a

15   robust framework around what subjective factors

16   should be considered and I considered those factors

17   and applied my adjustment.

18        Q.     And you applied them to a private

19   company because of unsystematic risk or what?  Why

20   did you apply them to this company?  Why did you

21   believe it was appropriate for CLS?

22        A.     Again, the data that arrives at a cost

23   of equity estimate is based on public company

24   information for the most part.

25        Q.     Okay.

1     A.     So if you stop before you apply a           02:19

2  company specific risk, for example, you have

3  basically used a public company equivalent cost of

4  equity.  This is clear in all the materials, it's

5  clear in the Duff & Phelps materials.  We do not

6  have a public company, we have a company that has

7  other attributes and other risks and I made an

8  adjustment to simply account for those other risks.

9     Q.     Okay.  So what risks did you see with

10  CLS that were -- that confirmed that a CSRP should

11  be applied?

12     A.     Again, in specific, as I mentioned in

13  both the rebuttal report and there's some specific

14  callouts in the expulsion price report, access to

15  capital markets is certainly a risk, in that public

16  companies have greater access to capital than

17  private companies.  And the two that were probably,

18  you know, most relatable, the quantitative features

19  would be what I call forecast risk and volatility

20  of earnings.

21     Q.     Yeah, but I mean, this company is

22  growing at 40 percent.  How would you have an issue

23  with forecast?

24     A.     Again, that 40 percent number, I've got

25  a 28 percent number compound, and I think more to

1   the point of forecast and volatility, it's the          02:21

2   ability to achieve the forecast results in cash

3   flows.  So growing revenues is one thing.

4   Delivering cash flows that drive value is something

5   different altogether.

6        Q.    Okay.  And what about, you said the

7   other one was -- so you said forecast risk, what

8   else, you said access to capital markets?

9        A.    And probably volatility of earnings.

10       Q.    Did you ever see that CLS had any

11  problem getting access to markets?

12       A.    Again, access to capital means

13  something perhaps a little bit different than what

14  you might be applying.  Public companies have

15  access to public markets, in terms of raising

16  equity secured -- raising money from equity

17  issuances and debt issuances, that is a difference

18  in cost to capital.

19       Q.    I mean, I understand that in a general

20  level.  I'm asking about this company, because you

21  determined that this company, you should apply a

22  CSRP, so I'm asking you, what did you find that

23  -- what issues did they have with access to capital

24  markets, specifically in particular to them?

25       A.    Well, again, they're a privately-held

1  company and they, therefore, do not have access to    02:22

2  the public equity and debt markets.  I think that's

3  kind of binary.  I think more to the point on that

4  issue is the volatility of earnings in the forecast

5  risk, which were elaborated on at length in my

6  rebuttal report.

7        Q.    Yeah, but the earnings were higher than

8  their industry peers, even public ones.

9        A.    Their earnings -- so expected earnings

10  were higher, perhaps.  Their historical earnings

11  were extremely volatile.

12              And again, to say that with your

13  history being volatile, we're suddenly going to go

14  to growth and smooth sailing is a risk.  A risk

15  that needs to be addressed to a company specific

16  risk factor in a valuation.

17        Q.    You would agree with me that someone

18  could disagree with you that there was volatility,

19  correct?

20        A.    No.

21        Q.    Well, Mr. Sweet did, right?

22        A.    Then he's just simply incorrect on

23  that.

24        Q.    Okay.  You say that all of the

25  valuation reference materials that you relied upon

1  say that you apply a CSRP to a privately-held                    02:23

2  company or you must look at the risk factors,

3  particularly?

4       A.    The valuation materials discuss company

5  specific risk as a key component of cost to equity,

6  and they all talk about the concept of the subject

7  company's risks need to be appropriately captured,

8  either in cash flows or in a cost of equity or a

9  cost of capital.

10      Q.    Right.  But someone can disagree with

11  you or your interpretation of the risk, right, such

12  that a CSRP is not applicable?

13      A.    I would say the risks still exist in

14  this entity.  The risks could be captured through

15  cash flows, but as the analyst who developed the

16  cash flows, I did not capture those risks in the

17  cash flows.

18      Q.    Okay.

19      A.    I addressed them through a separate

20  risk.

21      Q.    I understand that, that's not my

22  question.  But you indicated that you don't

23  necessarily apply a CSRP, that you have to look at

24  the particular risk of that privately-held entity,

25  correct?

```
 1               REPORTER'S CERTIFICATE

 2

 3        I, QUINCEE B. ROCCAFORTE, Certified Court
    Reporter in and for the State of Louisiana,
 4  Certificate No. 21016, as the officer before whom
    this testimony was taken, do hereby certify that
 5  JASON MACMORRAN, after having been duly sworn by me
    on May 10, 2019, upon authority of R.S. 37:2554,
 6  did testify as hereinbefore set forth in the
    foregoing 93 pages;
 7        That this testimony was reported by me in the
    stenotype reporting method, was prepared and
 8  transcribed by me or under my personal direction
    and supervision, and is a true and correct
 9  transcript to the best of my ability and
    understanding;
10        That the transcript has been prepared in
    compliance with transcript format guidelines
11  required by statute or by rules of the board, and
    that I am informed about the complete arrangement,
12  financial or otherwise, with the person or entity
    making arrangements for deposition services;
13        That I have acted in compliance with the
    prohibition on contractual relationships, as
14  defined by Louisiana Code of Civil Procedure
    Article 1434 and in rules and advisory opinions of
15  the board;
          That I have no actual knowledge of any
16  prohibited employment or contractual relationship,
    direct or indirect between a court reporting firm
17  and any party litigant in this matter or is that
    any such relationship between myself and a party
18  litigant in this matter.
          I am not related to counsel or to the parties
19  herein, nor am I otherwise interested in the
    outcome of this matter.
20

21        Dated this 13th day of May, 2019.

22

23

24        _____
                 QUINCEE B. ROCCAFORTE, CCR, RPR
25               Certificate No. 21016
```