UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COMPLETE LOGISTICAL SERVICES, LLC, | ) ) ) | Civil Action No.: 18-3799 |
| Plaintiff, | ) ) ) | Judge: Eldon E. Fallon |
| versus | ) ) | Magistrate Judge: Michael North |
| DONALD RULH, JR., ARNOLD BAKER, MORRIS KAHN, MICHELLE ELWELL, AND SHAWANA HARRIS | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM REGARDING OBJECTIONS TO TRIAL EXHIBITS

Plaintiff, Complete Logistical Services, LLC ("CLS"), respectfully submits this memorandum in support of its objections to Mr. Rulh's trial exhibits and in opposition to Mr. Rulh's objections to CLS' trial exhibits in accordance with the Court's Pretrial Notice (Rec. Doc. 135-1).

## I.      CLS' OBJECTIONS TO MR. RULH'S TRIAL EXHIBITS

### A.      Rulh Exhibit 2

CLS objects to Mr. Rulh's exhibit 2 on the basis of relevance and hearsay.  This document is a letter from Mr. Rulh's counsel to Mr. Sens on November 28, 2017, requesting to inspect certain books and records of CLS.  Because this letter is an out-of-court statement apparently offered for the truth of the matter asserted, it is hearsay.

In his brief regarding exhibit objections, Rec. Doc. 321 at p. 3-4, Mr. Rulh states that this letter is not offered for the truth of the matter asserted but to prove that he was looking into financial irregularities.  But that fact is irrelevant for the reasons stated in CLS' motion *in limine* on this subject (Rec. Doc. 318).  Mr. Rulh also claims that the letter falls within the Rule 803(3) exception for then-existing state of mind because it shows that he was investigating alleged

financial irregularities.  That argument also fails.  Rule 803(3) only applies to the statements regarding the *declarant's* state of mind and the declarant in the letter is Mr. Carbo, not Mr. Rulh.

More importantly, the letter is irrelevant.  When the letter was sent, Mr. Rulh was a member of CLS.  He had not made his unauthorized $222,000 withdrawal from CLS' bank account, he had not been made an assignee, his expulsion process had not been started (or even conceived of), and he had not stolen or distributed any of CLS' trade secrets.  That his counsel made a request to inspect certain of CLS' financial records some time before any of the events giving rise to this lawsuit is not relevant to any disputed issue.  Accordingly, the Court should exclude this document from evidence.

### B.      Rulh Exhibits 3, 4, 5, 6, 7

Rulh exhibits 3, 4, 5, 6, and 7 are all similar.  These documents are various excerpts from e-mail chains related to CLS' day-to-day business activities.  All of the emails date from October or November of 2017 (before any of the events giving rise to this lawsuit) and all are incomplete excerpts of longer email chains (the pagination in the bottom right corner of the documents indicates that they are excerpts from longer documents).  Because these emails are incomplete and out-of-court statements apparently offered for the truth of the matter asserted, CLS objects on the basis of completeness and hearsay.

In his brief regarding exhibit objections, Rec. Doc. 321 at p. 4-5, Mr. Rulh states that these documents are not offered for the truth of the matter asserted but to prove that he was "involve[ed] in [CLS'] business."  He also suggests that these are not hearsay because they are admissions by a party opponent.  *See* Fed. R. Evid. 801(d)(2).  Mr. Rulh's arguments fail.  First, because Mr. Rulh is offering the documents to show that he was allegedly active in CLS' day-to-day operations, they are being offered for the truth of the matter asserted in the e-mails.  Second, that Mr. Rulh had some tangential involvement in 3-4 transactions falls far short of

demonstrating that he was active in CLS' business.  Third, Mr. Rulh's lack of activity in CLS' business is not relevant to any issue in this case.  Finally, Rule 801(d)(2) does not help Mr. Rulh because the only party that makes a statement in these e-mails is Mr. Rulh but, in order to satisfy 801(d)(2), the statement must be "offered against an opposing party."  Because Mr. Rulh is attempting to offer his *own* statements, Rule 801(d)(2) does not apply.

CLS also objects to these documents more generally on the basis of relevance.  These e-mails all date before any of the events giving rise to this suit occurred and none appear to relate to any matter at issue in this case.  Accordingly, the Court should exclude these documents from evidence.

### C.      Rulh Exhibit 8

Rulh exhibit 8 is an excerpt from an email chain related to invitations for CLS' 2017 employee Christmas party.  First, this e-mail chain is incomplete as it excludes the entire chain.  Second, it is hearsay.  Finally, it is not relevant to any disputed issue.  This e-mail was sent in November of 2017, before any of the events giving rise to this dispute.  Accordingly, it is irrelevant.

In his brief regarding exhibit objections, Rec. Doc. 321 at p. 5, Mr. Rulh states that the e-mail is not being offered for the truth of the matter asserted but to show that CLS was throwing a "large" Christmas party.  That argument, however, ignores that the alleged Christmas party is the precise content of the e-mail.  Thus, the email is being offered for the truth of the matter asserted.  Notwithstanding the hearsay issue, Mr. Rulh contends that the fact CLS threw a "large Christmas party" is relevant to the credibility of CLS' claim that it could not pay year-end bonuses because Mr. Rulh drained CLS' bank account.  But, even if Mr. Rulh's relevance argument had merit, this e-mail does nothing to support it.  The e-mail arguably shows that CLS was planning a Christmas party, but contains no evidence regarding the cost or size of that party or whether CLS

paid for or assumed the obligation to pay for the Christmas party before Mr. Rulh drained CLS' bank account right before Christmas.  Moreover, because Mr. Rulh did not drain CLS' bank account until a month *after* this e-mail was sent, this email cannot possibly be relevant to the problems caused by Mr. Rulh's unauthorized withdrawl.

    **D.**    **Rulh Exhibit 9**

Rulh exhibit 9 is an email sent by Mr. Rulh to CLS after he made his unauthorized withdrawal from CLS' bank account.  This e-mail relates Mr. Rulh's self-serving account of why he took the money and presents his account of his salary claim—a claim that Mr. Rulh has specifically dropped from this case.  Because this document contains Mr. Rulh's out-of-court statements and is apparently offered for the truth of the matter asserted, it is hearsay and inadmissible.

In his brief regarding exhibit objections, Rec. Doc. 321 at p. 5-6, Mr. Rulh contends that the e-mail is not offered for the truth and is evidence of his state of mind.  Neither argument has merit.  This e-mail is Mr. Rulh's statement of reasons for his unauthorized bank withdrawal.  Thus, it could not possibly be offered for any purpose other than to support his alleged reason for the withdrawal (*i.e.* the truth of the matter asserted).  Moreover, Mr. Rulh's belief, as stated in this e-mail, that he was entitled to his self-help recovery of allegedly-due salary is not admissible under Rule 803(3), which specifically does not apply to "statement[s] of memory or belief to prove the fact remembered or believed."  Fed. R. Evid. 803(3).  Finally, the alleged reasons for Mr. Rulh's unauthorized withdrawal are irrelevant.  Mr. Rulh has stipulated that he is not contesting his expulsion and the only issue is the quantum of his expulsion price.  His reasons for the unauthorized withdrawal have no bearing on that issue.

### E.      Rulh Exhibit 10

Rulh exhibit 10 is an excerpt from an e-mail chain and relates to Mr. Rulh's alleged salary claim, which he has specifically dropped form this case.  This document is hearsay and should be excluded for that reason alone.  Additionally, it is incomplete.  Because Mr. Rulh has withdrawn his salary claim, this e-mail correspondence is not relevant to any remaining disputed issue.  This e-mail is also inadmissible for the reasons stated in CLS' motion *in limine*, Rec. Doc. 318.

### F.      Rulh Exhibit 11

Rulh exhibit 11 is an excerpt from an email chain between CLS' corporate counsel and Mr. Rulh's then-counsel regarding Mr. Rulh's unauthorized bank withdrawal.  This document is incomplete, is hearsay, and is irrelevant.[1]  Moreover, it was not produced in discovery or identified in Mr. Rulh's prior exhibit list.  This Court's Scheduling Order could not be more clear on this issue: "The Court will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to the witness and/or exhibits, without an order to do so issued on motion for good cause shown."  Rec. Doc. 135, p. 2.  Because this document was not timely disclosed, it should be excluded for that reason alone.

This document also contains the self-serving (and inaccurate) legal opinions of Mr. Rulh's prior counsel regarding Mr. Rulh's unauthorized bank withdrawal.  In addition to being hearsay, the opinion of Mr. Rulh's counsel on this issue is irrelevant because Mr. Rulh is no longer contesting the fact of his expulsion.  *See* CLS' Motion *in limine*, Rec. Doc. 318.  Thus, this document should be excluded.

---

[1] Mr. Rulh contends that the e-mail is not hearsay because it is an admission by a party opponent. *See* Fed. R. Evid. 801(d)(2).  Because this e-mail contains a statement by Mr. Rulh's agent and it is being offered *by* (not against) Mr. Rulh, it is not a statement "offered against an opposing party," Fed. R. 801(d)(2), and Rule 801(d)(2) is, therefore, inapplicable.

### G.      Rulh Exhibits 12, 13, 14

Rulh exhibits 12-14 are various CLS financial records and e-mails transmitting same to Mr. Rulh.  CLS objects to these documents on the basis of relevance and the transmittal e-mails on the basis of hearsay.[2]  These documents, which are CLS financial records sent by Janet Pipitone to Mr. Rulh, are not relevant to any disputed issue in this case.  In his brief regarding exhibit objections, Rec. Doc. 321 at p. 6, Mr. Rulh contends that these documents are relevant to the question of whether he was authorized to misappropriate CLS' trade secrets.  That is inaccurate.  First, that Mr. Rulh obtained CLS records without authorization on other occasions is not relevant to the question of whether he was <u>authorized</u> to have such access.  Second, there is absolutely no evidence that Mr. Rulh distributed these records to third-parties (as he did with the records he misappropriated in March of 2018).  Thus, these documents have absolutely no relevance to that issue.  Because the documents are irrelevant and, in part, hearsay, they should be excluded.

### H.      Rulh Exhibits 15, 16, 17

Rulh exhibits 15, 16, and 17 are internal CLS emails distributing selected financial information to CLS' senior leadership in September, October, and November of 2017.  As a preliminary matter, these documents should be excluded because they were never identified on Defendant's exhibit lists or otherwise produced in discovery.  Mr. Rulh *first* produced these documents to CLS on July 23, 2019, more than one month after the first trial setting in this case and nearly three months *after* the expiration of discovery in this case.  *See* Rec. Doc. 135

---

[2] CLS also objects to exhibit 13 because it is not a complete document.  The pagination on the document indicates that there are additional pages omitted by Mr. Rulh.

(establishing May 6, 2019 discovery deadline).  There is no plausible excuse for Mr. Rulh's failure to produce these documents timely and they should be excluded for that reason alone.[3]

In his brief regarding exhibit objections, Rec. Doc. 321 at p. 6-7, Mr. Rulh contends that the e-mails are impeachment evidence because they contradict CLS' claim that it adequately protected its trade secrets.  That argument is meritless.  Whether CLS took adequate protections to protect its trade secrets is a disputed issue in this case.  Mr. Rulh cannot withhold substantive evidence relevant to that issue under the guise of "impeachment."  The Fifth Circuit specifically held as much in *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993).  In that case, the Fifth Circuit explained that "[s]ubstantive evidence is that which is offered to establish the truth of a matter to be determined by the trier of fact" whereas "[i]mpeachment evidence, on the other hand, is that which is offered to discredit a witness."  *Id.*  The Fifth Circuit held that evidence may be withheld under the auspices of impeachment only where its *sole* purpose is impeachment.  Where the purpose of the evidence is "at the very least in part substantive," it must be timely disclosed.  *Id.*  Because these documents, which relate to one of the core disputed issues in this case, are "at the very least in part substantive" but were not timely and properly disclosed to CLS, the Court should exclude these documents from evidence.

In addition to Mr. Rulh's failure to produce the documents, they should be excluded on the basis of hearsay and relevance.  As to hearsay, Mr. Rulh states in his brief regarding exhibit objections, Rec. Doc. 321 at p. 7, that the documents are not offered for the truth of the matter asserted, but that statement is not credible.  He is offering these documents, which transmit certain financial records to key members CLS' leadership, to prove that CLS shared the

---

[3] As CLS notes above, this Court's Scheduling Order also supports this result.  Rec. Doc. 135, p. 2 ("The Court will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to the witness and/or exhibits, without an order to do so issued on motion for good cause shown." ).

documents internally.  That is precisely the matter asserted in the e-mails, which are therefore hearsay.  As to relevance, these e-mails, which were sent while Mr. Rulh was still a member of CLS, were sent only to CLS' leadership and do nothing to demonstrate that CLS failed to protect its trade secrets outside of CLS.  There is no evidence that these documents were shared outside of CLS and, accordingly, they are not relevant to or probative of any disputed issue and should be excluded from evidence.

I.      **Rulh Exhibits 18, 19, 20, 21, 22**

Rulh exhibits 18-22 are excerpts from financial records produced by CLS in this litigation.  They contain entries in CLS' general ledger from February (exhibit 18), June (exhibit 19), July (exhibits 19 & 20), and August (exhibits 21 & 22) of 2019.  There are two separate reasons that these documents are irrelevant.

First, nearly all of the transactions depicted on the ledger occurred *after* both the valuation date used by <u>both</u> experts in this case (February 28, 2018) and the Postlethwaite and Netterville expulsion price evaluation report utilized by CLS' members (June 5, 2018).[4] Nonetheless, Mr. Rulh states in his brief regarding exhibit objections, Rec. Doc. 321 at p. 7-8, that the documents are relevant to show that CLS did not lose certain diving clients that Mr. MacMorran forecasted that they would lose as a result of Mr. Coker's departure.  Because nearly all of these alleged transactions occurred *after* Mr. MacMorran's report was issued, they cannot have any plausible relevance with respect to the accuracy of his report because the documents at issue evidence transactions about which Mr. MacMorran could not have possibly had any knowledge when his report was issued.

---

[4] Only one of the disputed exhibits (exhibit 18) contains transactions that date prior to June 5, 2018 and only one transaction on that exhibit is even arguably relevant.  That transaction is discussed below.

Second, even if the documents related to transactions that occurred in a relevant time period, the contents of the documents are not probative of the issue identified by Mr. Rulh.  None of the entries contain any information that would allow the jury or the court to conclude what services CLS provided to the clients at issue.  Specifically, the documents do not identify any of the transactions at issue as transactions related to the provision of diving services.[5]  Nor do any of the transactions conclusively demonstrate that CLS performed services (diving or otherwise) for those clients at any relevant time.  For example, exhibit 18 indicates that, on February 14, 2018, CLS received a payment from a client to which it had previously provided diving services.  The exhibit does not, however, indicate whether this payment was related to the provision of diving services or, most importantly, whether any services to which this payment relates were provided after Mr. Coker left CLS.  Nor did Mr. Rulh conduct any discovery on these issues.  Because these documents do not establish that CLS provided any diving services to any of the clients at issue in Mr. MacMorran's report, they are not relevant to any disputed issue and should be excluded.

**J.      Rulh Exhibit 31**

Rulh exhibit 31 is an e-mail chain between Spencer Sens, CEO of CLS, and Kelly Bouillotte, the CEO of Trash Doctors.[6]  In this e-mail chain, Mr. Sens shares CLS' annual gross sales and profit over a several year period.  CLS objects to this exhibit on the grounds of relevance and hearsay.  Notably, Mr. Rulh's brief regarding exhibit objections contains no defense of this exhibit.  *See* Rec. Doc. 321 at p. 8.  This e-mail, in addition to being hearsay, has no plausible relevance in this case.  In connection with the parties summary judgment briefing, Mr. Rulh previously argued that that this e-mail demonstrates that CLS failed to take adequate

---

[5] In fact, some of the transactions cited by Mr. Rulh relate to the provision of non-diving services.

[6] Trash Doctors is a company related to CLS that has overlapping ownership with CLS.

steps to protect its trade secrets because CLS shared its trade secrets outside of CLS, but this e-mail is not probative of that issue.

CLS' claim against Mr. Rulh is based on CLS' assertion that Mr. Rulh took detailed financial records and CLS' customer list (which included a detailed listing of the revenue generated by each client) from CLS and distributed those documents to Mr. Rulh's prospective business partners.  This e-mail chain does not include any of the information on which CLS' trade secrets claim is based.  It does not name a single CLS customer and includes only highly generalized information regarding CLS' annual revenues and profit.  Stated differently, the information shared in this e-mail bears no plausible resemblance to the documents on which CLS' trade secrets claim is based.  Accordingly, because this e-mail chain does not include any of the highly detailed information underlying CLS' trade secrets claim, it is not relevant to any disputed issue in this case and should be excluded from evidence.

### K.     Rulh Exhibit 32

Rulh exhibit 32 is purportedly the LinkedIn pages of Waylon Brown, Hunter Chaisson, and Katie Hulin.[7]  CLS objects to this exhibit on the basis of hearsay and relevance.  In his brief regarding exhibit objections, Rec. Doc. 321 at p. 8, Mr. Rulh states, without any explaination, that this information is "relevant to refute MacMorran/damages."  Not only is it wholly unclear how these documents would accomplish that task, but that provides no response to CLS' hearsay objection.  Copies of these individual's LinkedIn pages are classic hearsay and Mr. Rulh has offered no argument to the contrary.  Accordingly, the exhibit should be excluded for that reason alone.  Moreover, because Mr. Rulh cannot explain how this exhibit is relevant to any disputed issue, it should be excluded for that additional reason.

---

[7] CLS' counsel was first provided a copy of exhibit 32 on August 16, 2019 and it was not produced in discovery.

## II.      RULH'S OBJECTIONS TO CLS' EXHIBITS

### A.      CLS Exhibit 5

Mr. Rulh objects to this e-mail on the basis of relevance and contends that it is irrelevant because Mr. Rulh will stipulate that he was made an assignee of CLS.  But this e-mail is relevant to an additional issue.  The e-mail, which tells Mr. Rulh that he has no authority to act for CLS, is relevant to the question of whether Mr. Rulh knew that he had no authorization to take CLS' trade secrets.   Accordingly, the e-mail is relevant and admissible.

### B.      CLS Exhibit 6

Mr. Rulh objects to the minutes of this meeting of CLS' members on the basis of relevance and hearsay.  CLS will lay the appropriate foundation at trial that this document falls within the business record exception to the hearsay rule.  *See* Fed. R. Evid. 803(6).  As to Mr. Rulh's relevance objection, this document is relevant to demonstrate that CLS properly complied with the Operating Agreement in expelling Mr. Rulh and setting his expulsion price.  It is also relevant to CLS' trade secrets claim because it demonstrates that Mr. Rulh knew that he was being expelled from the company before he took CLS' financial records.  This evidence is, therefore, relevant to the credibility of Mr. Rulh's claim that he did not know that he was not authorized to steal and distribute CLS' financial records.

### C.      CLS Exhibit 7

CLS exhibit 7 is the Expulsion Price Report prepared by Postlethwaite & Netterville for the members of CLS to consider in arriving at an expulsion price for Mr. Rulh.  Mr. Rulh objects to that report on the basis of hearsay.  CLS will lay the appropriate foundation at trial that this document falls within the business record exception to the hearsay rule.  *See* Fed. R. Evid. 803(6).  Moreover, the document is relevant to a number of issues other than for the truth of the matter asserted.   Namely, to demonstrate that CLS' members carefully complied with the

requirements of the Operating Agreement and considered the expulsion price for Mr. Rulh's interest and that the expulsion price was not arbitrary (as alleged by Mr. Rulh). The report is also relevant because CLS' members relied on its contents in arriving at Mr. Rulh's expulsion price and to demonstrate that CLS' members complied with their obligation under the Operating Agreement to obtain a financial evaluation of Mr. Rulh's interest in CLS and to set his expulsion price.

### D.      CLS Exhibit 8

Mr. Rulh objects to this resignation e-mail as hearsay and hearsay within hearsay. This e-mail is not hearsay for two reasons. First, CLS will lay the appropriate foundation at trial that this document falls within the business record exception to the hearsay rule. *See* Fed. R. Evid. 803(6). Second, even if this resignation e-mail does not fall within that exception to the hearsay rule, it is admissible pursuant to Federal Rule of Evidence 703. Mr. MacMorran, CLS' expert in this case, will testify that he relied on this resignation e-mail in support of his conclusion that Scott Coker (the author of the e-mail) left CLS because he was not paid his year-end bonus. *See United States v. Lockhart*, 844 F.3d 501, 511 (5th Cir. 2016) ("Rule 703 allows an expert to base his testimony on otherwise inadmissible hearsay evidence."). Finally, with respect to Mr. Rulh's hearsay within hearsay objection it is wholly unclear to what he is referring. There are no hearsay statements referenced within the letter, which falls within the business records exception to the hearsay rule. Thus, the hearsay within hearsay objection is without merit and the document is admissible.

### E.      CLS Exhibit 9

Mr. Rulh objects to the minutes of this meeting of CLS' members on the basis of relevance and hearsay. CLS will lay the appropriate foundation at trial that this document falls within the business record exception to the hearsay rule. *See* Fed. R. Evid. 803(6). As to

relevance, this document contains the minutes of the meeting at which Mr. Rulh was expelled from CLS.  It is therefore relevant to demonstrate what happened at the meeting, the information considered by the members of CLS in determining the expulsion price, and Mr. Rulh's participation (or lack thereof) in the expulsion process.  To the extent that there are additional hearsay statements within the document, statements made by Mr. Rulh and his representatives at the meeting are not hearsay pursuant to Rule 801(d)(2) (admission by a party opponent).  Moreover, any statements made by CLS and its counsel are not offered for the truth of the matter asserted but to provide appropriate context to the non-hearsay statements of Mr. Rulh and his representatives.  Accordingly, this document is both relevant and admissible.[8]

### F.     CLS Exhibits 10, 11

CLS exhibits 10 & 11 are a letter sent to Mr. Rulh informing him of his expulsion and his expulsion price (exhibit 10) and the promissory note issued to Mr. Rulh in accordance with CLS' Operating Agreement (exhibit 11).  Mr. Rulh objects to these documents on the basis of hearsay and relevance.  As to the hearsay objection, CLS will lay the appropriate foundation at trial that these are business records.  Moreover, these documents are relevant to demonstrate that (1) CLS complied with its obligations under the Operating Agreement in expelling Mr. Rulh, and (2) CLS properly arrived at an expulsion price in accordance with the Operating Agreement.

### G.     CLS Exhibit 12

CLS exhibit 12 is an e-mail in which Mr. Rulh (through his counsel Mr. Carbo) agrees that Postlethwaite & Netterville is qualified to evaluate his financial interest in CLS.  Mr. Rulh objects to this e-mail on the basis of hearsay and relevance.  This document is not hearsay

---

[8] Mr. Rulh suggests in his brief regarding exhibit objections, Rec. Doc. 321 at p. 1, that CLS' corporate documents should be excluded from evidence because they are "self-serving" and have no presumption of reliability.  These statements are not supported by any citation to authority and should be disregarded by the Court.

because the statements of Mr. Rulh's agent (Mr. Carbo) are admissions by a party opponent pursuant to Rule 801(d)(2).  Moreover, the document is relevant to the credibility of Mr. Rulh's present attack on Postlethwaite & Netterville.  As CLS detailed in its motion *in limine* (Rec. Doc. 318), Mr. Rulh has levied a series of baseless attacks against Postlethwaite & Netterville, alleging that they intentionally devalued his interest in CLS and that they "weaponized" certain discounts that are routine in evaluations of this sort.  Accordingly, this e-mail is relevant to show that Mr. Rulh previously agreed that Postlethwaite & Netterville was a firm competent to evaluate his interest in CLS.

    **H.**    **CLS Exhibit 28 - Withdrawn**

    **I.**    **CLS Exhibit 30**

CLS exhibit 30 are invoices issued to CLS by Advanced Discovery, the computer vendor CLS retained to conduct forensic examinations of the hard drives of CLS computers formerly used by Mr. Rulh, Janet Pipitone, and Shawanna Harris.  CLS claims these expenses as damages on its DTSA and CFAA claims.  Mr. Rulh objects to these documents on the basis of hearsay and authenticity.  CLS will lay the appropriate foundation at trial that these documents fall within the business records exception to the hearsay rule.  Fed. R. Evid. 803(6).  Moreover, CLS will properly authenticate these invoices at trial.  CLS will offer testimony demonstrating that it incurred these expenses responding to the theft of its trade secrets, that the work it commissioned was properly performed on CLS' behalf, and that CLS paid these invoices.[9]

    **J.**    **CLS Exhibits 31-35**

CLS exhibits 31-35 are various communications authored by Mr. Rulh in which he harasses CLS, its employees, its counsel, and various third parties.  Mr. Rulh objects to these

---

[9] To the extent that the Court believes that CLS is required to incur the unnecessary expense of calling a witness from Advanced Discovery to authenticate these invoices, CLS reserves its right to do so.

exhibits on the basis of relevance. CLS offers these exhibits for the sole purpose of refuting Mr. Rulh's claim that he was expelled from CLS for any reason *other* than the reasons stated by CLS, including his pattern of bizarre and harassing behavior towards CLS and its employees. As CLS explains in its motion *in limine*, Rec. Doc. 318, CLS believes that the reasons for Mr. Rulh's expulsion (and his inaccurate characterization of those reasons) are irrelevant and, if the Court grants CLS' motion on this topic, CLS intends to withdraw exhibits 31-35. However, if Mr. Rulh is permitted to argue at trial that he was expelled for "pretextual" reasons, that he was "frozen out" or "squeezed out" of CLS for nefarious reasons, or to otherwise speculate on the reasons behind his expulsion, then CLS needs to offer this evidence to demonstrate that Mr. Rulh's speculation is wholly inaccurate and that he was expelled solely for the reasons stated by CLS, including his escalating pattern of bizarre and harassing behavior.

## III.   CONCLUSION

For the foregoing reasons, CLS respectfully requests that the Court sustain CLS' objections to Mr. Rulh's trial exhibits and overrule Mr. Rulh's objections to CLS' trial exhibits.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:   */s/ David L. Patrón*
David L. Patrón (Bar #22566)
Ashley J. Heilprin (Bar #34928)
Arthur R. Kraatz (Bar #35194)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Facsimile: 504-568-9130
Email: patrond@phelps.com
Email: ashley.heilprin@phelps.com
Email: arthur.kraatz@phelps.com

**ATTORNEYS FOR PLAINTIFF COMPLETE LOGISTICAL SERVICES, LLC**