UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **COMPLETE LOGISTICAL SERVICES, LLC** | * | Civil Action No.: 18-3799 |
| | * | |
| | * | Judge: Eldon E. Fallon |
| | * | |
| versus | * | Magistrate Judge: Michael North |
| | * | |
| **DONALD RULH, JR.,** *et al.* | * | |

### REPLY MEMORANDUM IN SUPPORT OF
### MOTION IN LIMINE TO STRIKE IMPERMISSIBLE ATTORNEY ARGUMENT

Defendant/counterclaimant, Donald Rulh, Jr., respectfully submits this reply memorandum in further support of his *Motion in Limine to Strike Impermissible Argument* and to respond to the arguments raised by Plaintiff, Complete Logistical Services, LLC (hereinafter "CLS"), in its *Opposition* (Rec. Doc. 317).

### ARGUMENT

I. **CLS's allegedly "logical" interpretation of Section 10.3 is no such thing; rather, it is merely a blatant attempt to impermissibly use attorney argument to introduce irrelevant facts that CLS would be barred from entering into evidence at trial.**

In opposition to Mr. Rulh's well-founded *Motion in Limine*, CLS merely continues to promote that, when a member is expelled, the remaining member of CLS may apply any non-specific discounts that they deem appropriate based on the extent of the expelled member's supposed misconduct. CLS concedes that this power is not *expressly* granted by the Operating Agreement, and CLS is correct because (1) Section 10.3, in fact, says nothing to support such a bold interpretation, and (2) it is uncontested that Section 10.3 is the provision that governs the valuation of an expelled member's interest. However, CLS contends, through attorney argument only and not with competent evidence, that its power to impose punitive sanctions on a former member "logically follows" from the confluence of Article 10.3 and a separate, irrelevant

provision that governs the process of voluntary withdrawal.  According to CLS, it is not the <u>express text</u> of the Operating Agreement, but rather the <u>spirit</u> of the Agreement, which can only be conjured with the aid of learned counsel.  Hence, CLS intends to use its closing argument to explain its wishful and selective interpretation regarding Section 10.3 to the jury.

Significantly, to support this interpretation of Section 10.3, CLS has not offered any extrinsic evidence—such as any testimony of its drafter.  Instead, CLS states in its *Opposition* that the Operating Agreement itself "is the **best evidence**" of the members' intent.  *Id.*, p. 2. (emphasis in original).  But in arguing that it needs to explain Section 10.3 to the jury, CLS dispels the notion that the Operating Agreement "speaks for itself".  Strangely, according to CLS, all the relevant information that would catalyze such an interpretation in the minds of the jury simply flows from the text itself, and there is no need to present evidence in support.  This position, however, begs the following question: *If CLS's interpretation simply flows from the text itself, why is counsel's demonstration in logic even necessary?*  Or said another way: *If it is logical, then why does it need to be explained?*

At six (6) full paragraphs, Section 10.3 is the longest single provision in the Operating Agreement.  In multiple instances, Section 10.3 calls for its processes concerning expulsion to be "strictly construed."   Yet, Section 10.3 never expresses any intention to subject an expelled member's interest to the discounts that CLS claims are implied therein.  Even so, CLS intends to enlist its counsel to apply a string of syllogisms to arrive at the unfounded conclusion as to the members' intent, which CLS admits will not be addressed by competent evidence prior to closing arguments.

**II.     The argument CLS seeks to introduce in closing arguments is irrelevant to the jury's charge.**

    **(a)     The range of "possible" logical interpretations proffered by CLS counsel is not illustrative or dispositive of the members' common intent.**

Even if counsel's interpretation of the Section 10.3 was a "logical" one, that fact would be completely irrelevant to the question being asked of the jury.  In deciding on Mr. Ruhl's rights under the Operating Agreement, like any contract, the jury will be tasked with determining the common intent of the parties, not venturing into the frontiers of "logical" pablum.  La. Civ. Code art. 2045 ("Interpretation of a contract is the determination of the common intent of the parties").  The issue in this case has nothing to do with the range of interpretations that counsels' logic could support.  Rather, the determinative issue is what was the parties' common intent in executing the Operating Agreement and CLS's counsel, and despite his impertinent efforts to insinuate himself as witness as this trial, he is not a witness and has no personal knowledge as to the members' intent.

    **(b)     CLS's argument that the members envisioned a more punitive Section 10.3 than what was drafted is a question of contractual error, an issue or defense which CLS has not raised.**

By suggesting that CLS intended a more punitive provision than what was actually written, CLS is asserting a claim of contractual error with respect to the Operating Agreement. More specifically, CLS is contending and wants its counsel to tell the jury that even though Section 10.3 does not provide for discounts, this is only because the provision for discounts was erroneously omitted from Section 10.3 by the drafter.  Despite CLS's claim that the text of the Operating Agreement is the "best evidence" to support its argument, vices of consent such as drafting errors generally require extrinsic evidence. La. Civ. Code art. 1848.  CLS will offer no such evidence.

3

Under Louisiana law, to properly assert that the Operating Agreement authorizes discounts to the interest of an expelled member, CLS must proffer extrinsic evidence and prove clearly and convincingly that, despite the omissions in Section 10.3, the parties executed the Operating Agreement under mutual error and, in fact, shared the common intent to authorize such discounts. *See Peironnet v. Matador Res. Co.*, 2012-2292 (La. 6/28/13); 144 So.3d 791, 816.  The exercise of counsel's logic would never and cannot suffice to establish such a claim for error.  Proving the position that CLS now seeks to assert requires a showing of competent proof at trial, not the closing argument.  Regardless of how far CLS can stretch the limits of conventional logic, the only relevant consideration is what was the common intent of the parties in executing the Operating Agreement.  As such, CLS cannot raise a defense of error as to Section 10.3 through the argument it now seeks to proffer during its closing argument.

### III. CLS's attorney argument is inadmissible as a matter of evidentiary law, and even more improper in the context of a closing argument.

CLS intends to offer a new theory as to how to interpret the Operating Agreement, but this runs entirely contrary to Rules of Evidence and the purpose of closing arguments.  The rules of evidence require personal knowledge to support the evidence offered.  Counsel for CLS has no personal knowledge as to the intent underlying the drafting of Section 10.3.  CLS is asserting that Article 10.3 authorizes direct punitive action by mere implication.   In seeking to offer attorney argument as to its wishful interpretation, counsel for CLS would have this Court sanction his efforts to invade the province of the jury and have the jury adopt CLS's self-serving and selective interpretation of Section 10.3.  In addition to trampling on the domain of the jury, the Court would be permitting CLS to introduce irrelevant, highly prejudicial and non-probative circumstances of alleged harm and/or "egregious" conduct on the part of Mr. Rulh.  To allow this would be contrary to the Rules of Evidence and governing jurisprudence.

Federal courts have prohibited experts, who presumably have some independence, from providing testimony as to the legal interpretation of a contract. As such, it would strain credulity for this Court permit an advocate such as counsel for CLS to offer his interpretation of the Operating Agreement. In *S.E.C. v. Goldsworthy*, 2008 WL 2943398 (D. Massachusetts 2008), a party sought to call an expert to testify as to the appropriate way to interpret a contract. However, the court excluded the expert, finding that "it is not appropriate to have experts opine as to the legal obligations of the parties under the contract." *Id*. at *4. The court stated that such testimony is especially inappropriate with respect to matters not requiring a scientific or technical understanding by the jury. *Id*. Thus, particularly concerning matters within the knowledge of lay jurors—such as logic—courts do not allow parties to introduce experts to demonstrate the proper interpretation of a contract. *See id.* Contract interpretation is the province of the jury, and parties cannot call experts for the purpose of invading it. *Id*.

Accordingly, CLS would be barred from calling an expert to testify as to proper contract interpretation because to do so would wrongfully influence the jury and improperly tread on the jury's province. Notwithstanding, CLS would seek to raise the stakes of this impropriety and simply enlist its counsel to do exactly that in its closing argument. CLS cannot repurpose the summation of evidence into a self-serving lecture on contract interpretation and attorney logic with the hope that the jury will grasp on to that logic right before it retires to deliberate.

**IV.    CLS cannot make any statement in its closing argument that would suggest an awareness of outside facts not available in the evidence.**

The closing argument is simply a summation of the evidence offered at trial. Trial attorneys are barred from offering their own opinions to the jury in closing arguments, particularly when that opinion "suggest[s] knowledge of outside evidence not before the jury." *United States v. Bess*, 593 F.2d 749, 755 (6th Cir. 1979). Juries are prone to give undue weight to the opinions of counsel,

and simply disclaiming to the jury that counsel's interpretation is based on evidence presented does not alleviate this risk. *Id*. Accordingly, trial courts must ensure that improper statements are kept out of counsels' closing arguments. *Id*. at 753 ("We join the Fifth Circuit in expressing our dismay at the continuing problem with improper statements in summations by counsel."); *see United States v. Morris*, 568 F.2d 396, 401-403 (5th Cir. 1978).

Attorneys giving closing arguments are barred from referencing excluded evidence, and this prohibition includes facts admitted for a limited purpose. *United States v. Taylor*, 530 F.2d 639, 642 (5th Cir. 1976). Trial counsels giving closing arguments may not imply an awareness of facts not available in the evidence. *United States v. Vaglica*, 720 F.2d 388, 393 (5th Cir. 1983). Despite these explicit prohibitions, CLS intends to make the unsubstantiated suggestion that Mr. Ruhl's interest is subject to punitive sanctions from "between the lines" of the Operating Agreement because he was expelled for some "egregious" behavior that CLS is barred from sharing with the jury. In doing so, CLS would invite the jury to speculate and invent any possible "egregiousness" that would explain Mr. Ruhl's departure from CLS and would be doing so right before the jury retires to deliberate.

## CONCLUSION

CLS's allegedly "logical" interpretation of Section 10.3 is no such thing; rather, it is merely a blatant attempt to impermissibly use attorney argument to introduce irrelevant facts that CLS would be barred from entering into evidence at trial. The range of "possible" logical interpretations proffered by CLS counsel is not illustrative or dispositive of the members' common intent and is thus irrelevant. A summary CLS's counsel's logical waxing or construction would be non-probative and highly prejudicial. As such, Mr. Rulh's *Motion in Limine* should be granted and any proposed attorney

argument as to the interpretation of Section 10.3, logical or otherwise, must be excluded from trial.

                                        Respectfully submitted,

                                        */s/ J. Geoffrey Ormsby*
                                        **RANDALL A. SMITH (#2117)**
                                        **J. GEOFFREY ORMSBY, T.A.  (#24183)**
                                                **-OF-**
                                        **SMITH & FAWER, L.L.C.**
                                        201 St. Charles Avenue, Suite 3702
                                        New Orleans, Louisiana 70170
                                        Telephone: (504) 525-2200
                                        Telecopy: (504) 525-2205

                                        ***Counsel for Donald Rulh, Jr.***